Lillian R. CRAIG, a feme sole, on behalf of Michael A. Kelly, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, United States of America or his successor, Defendant.

Civ. A. No. 3–2496–C.

United States District Court
N. D. Texas,
Dallas Division.

March 24, 1969.

As Amended April 25, 1969.

Bernard Cohen, Mabel Spellman Barber, Dallas, Tex., for plaintiff.

Eldon B. Mahon, U. S. Atty., by Andrew Barr, Asst. U. S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

Michael A. Kelly, son of Mary Ann Gibbs (Kelly) (Tatum) and petitioner's son, was born out of wedlock December 8, 1959. At the age of six weeks Michael was placed in the care of his grandmother, Lillian R. Craig, who has thereafter cared for the child. Although in February, 1965, plaintiff consulted an attorney with regard to the adoption of Michael, a formal petition for adoption was first filed July 18, 1966. Adoption of Michael by Mrs. Craig was formally decreed on October 13, 1966.

Subsequent to plaintiff's taking Michael in January, 1960, but before Michael's adoption, petitioner filed an application for Old Age Benefits on December 6, 1961. The Social Security Administration conferred benefits upon her as of December, 1960. Appellant, on behalf of Michael Kelly, filed an application for Child's Insurance Benefits in November, 1966, which was denied by the Payment Center of the Social Security Administration on December 22, 1966. After petitioner made application for reconsideration, the Reconsideration Branch of the Social Security Administration affirmed the Payment Center's decision on March 29, 1967. Plaintiff then requested an appeal and presented the case to a Hearing Examiner on June 9, 1967. The examiner granted child's benefits to plaintiff and the Appeals Council, *sua sponte*, reviewed and reversed the hearing examiner's decision on January 24, 1968. The Council held that (1) Michael Kelly had not been legally adopted within the requisite period, i. e., before August, 1966 (42 U.S.C.A. § 402(d) (9) (B), as extended by Section 323(b) of Public Law 89–97 enacted July 30, 1965), nor (2) equitably adopted before December 5, 1961, the filing date of Mrs. Craig's application for old-age benefits. The latter holding disqualified Michael for child's insurance benefits under the provisions of 42 U.S.C.A. § 402(d) (1) and (3), which deals with adoption by the old-age or disability beneficiary in advance of such person filing for his (or her) benefits. Had Michael been adopted as of that date, Section 402(d) (9), a more restrictive section than 402(d) (1) and (3), would have been inoperative. The former holding in terms of 42 U.S.C.A. § 402(d) (9) affected Michael's qualifications for child's benefits if adopted by a person who prior to the adoption filed for old-age or disability benefits. By this holding the Appeals Council has in effect construed the phrase "legally adopted" in Section 402 (d) (9) (B) to mean formally adopted pursuant to the appropriate state court's decree. The correctness of this ruling is the sole issue for determination by this

court. Jurisdiction is based on 42 U.S. C.A. § 405(g).[1]

Section 202(d) (1), 42 U.S.C.A. § 402 (d) (1),[2] establishes the right of every child to Child's Insurance Benefits provided among other criteria the applicant can establish that (1) he has the status of a child of an individual entitled to old-age benefits [402(d) (1)] and (2) was dependent upon the individual so entitled, if living, at the time

application for Child's Insurance Benefits is filed [402(d) (1) (C)]. Child status is determined in accordance with Section 216(e), 42 U.S.C.A. § 416(e),[3] or 216(h) (2) (A), 42 U.S.C.A. § 416(h) (2) (A).[4] The Section 202(d) (1) (C) dependency requirement is determined by Section 202(d) (3), 42 U.S.C.A. § 402(d) (3), as amended.[5] If it were not for section 202(d) (9), 42 U.S.C.A. § 402(d) (9) as amended,[6] Michael would be en-

1. "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, * * *."

2. "Child's insurance benefits.
    (d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits * * * if such child—
    (A) has filed application for child's insurance benefits,
    (B) at the time such application was filed was unmarried and either (i) had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, and
    (C) was dependent upon such individual—
        (i) if such individual is living, at the time such application was filed,
        (ii) if such individual has died, at the time of such death, or
        (iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,
    shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs— * * *."

3. "Child.
    (e) The term 'child' means (1) the child or legally adopted child of an individual, and (2) a stepchild * * *."

4. "Determination of family status.
    (2) (A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

5. "Child's insurance benefits.
    (d) (3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1) (C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—
        (A) such child is neither the legitimate nor adopted child of such individual, or
        (B) such child has been adopted by some other individual.
    For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h) (2) (B) or section 416(h) (3) of this title shall be deemed to be the legitimate child of such individual."

6. "Child's insurance benefits.
    (d) (9) If an individual entitled to old-age insurance benefits (but not an individual included under paragraph (8) of this subsection) adopts a child after such individual becomes entitled to such benefits, such child shall be deemed not to meet the requirements of clause (i)

titled to child's benefits under the existing facts. However, this section changes the determination of dependency when the child applicant is adopted after the adopting parent has become entitled to old-age or disability benefits. When such a situation exists, as here, the applicant for child's benefits must have been "legally adopted" by the old-age beneficiary within 2 years of the month following the date on which the adopting parent became so entitled. Mrs. Craig was entitled to such benefits as of December, 1960, and, therefore, January, 1963 terminated the period during which Michael, in order to qualify for child's benefits, had to have been adopted by her. Section 323(b) of Public Law 89–97 enacted July 30, 1965 [7] suspended the adoption period prescribed by 202(d) (9) (B) for any child adopted before August, 1966. Thus, if "legal adoption" under 202(d) (9) (B) means only formal adoption as established by decree of the appropriate state court, as the Appeals Council held and appellee contends, Michael would not be entitled to the subject benefits.

The prior two cases which dealt with this issue did so in terms of "equitable adoption" as provided in Section 416(h) (2) (A). In Davis v. Celebrezze, 239 F. Supp. 608 (S.D.W.Va.1965) the court first determined that the wage earner

under the disability provisions had not "legally adopted" the child claimant within the required statutory period, but then held that the child may nonetheless qualify "by virtue of the concept of 'equitable adoption' so as to come within the requirements of the statute." Davis v. Celebrezze, supra at 610. The court reached its second holding by reading Sections 416(e) and 416(h) (2) (A) in *para materia* and then recognizing that the government would concede that the West Virginia courts would apply "equitable adoption" when warranted by the facts. "This concession by the Secretary", the judge added, "is found to be compatible with his duty to administer this social legislation in the broad framework of its humanitarian aim—to ameliorate economic hardship to the wage earner and those dependent upon him—and this court can see no reason to disagree therewith." Davis v. Celebrezze, supra at 611.

Bray v. Gardner, 268 F.Supp. 328 (E. D.Tenn., N.D.1967) also dealt with the issue of whether the child claimant had been "legally adopted" within the statutory period. In *Bray*, the court acknowledges its sensitivity to a liberal construction of the Social Security Act, but after discussing *Davis* and mentioning Rader v. Celebrezze, 253 F.Supp. 325 (D.C.Ky.1966), it held that petitioner was not so entitled since the Tennessee

of paragraph (1) (C) of this subsection unless such child—

(A) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(B) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits, but only if—

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance benefits, for the year before such period of disability

began, and (ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month."

7. "The amendments made by subsection (a) of this section shall be applicable to persons who file applications, or on whose behalf applications are filed, for benefits under section 202(d) of the Social Security Act on or after the date this section is enacted. The time limit provided by section 202(d) (10) (B) [now 202(d) (9) (B)] of such Act as amended by this section for legally adopting a child shall not apply in the case of any child who is adopted before the end of the 12-month period following the month in which this section is enacted."

courts had expressly denied recognition of "equitable adoption".

Although *Bray* cites Rader v. Celebrezze, supra, *Rader* is not actually in point with the case at bar. In that case the Appeals Council stated that the dependency requirement " 'might be met' " if the child claimant had been equitably adopted " 'prior to the beginning of the wage earner's period of disability * * or prior to the month when he became entitled to disability insurance benefits * * *.' " The district court reversed the Appeals Council on the Council's holding that Kentucky did not recognize equitable adoption and affirmed the hearing examiner in his conclusion that Anita Jo Rader had been equitably adopted by Emory Rader implicitly adding that such adoption occurred at the time prescribed by the Appeals Council. The Appeals Council in the case at bar made the same ruling as in *Rader* and also recognized Texas' acceptance of equitable adoption but held such adoption had not occurred as of the time of Mrs. Craig's application for old-age benefits.

■ In sum, *Davis* granted relief applying equitable adoption since recognized in West Virginia to a section 402 (d) (9) (B) situation. It in essence engrafted Section 416(h) (2) (A) onto Section 402(d) (9) (B) simply because it was not incompatible with the Secretary's duties under this social legislation. *Bray* denied relief because Tennessee did not recognize equitable adoption. The *Rader* court granted relief because after the Appeals Council acknowledged that equitable adoption had occurred prior to the period of disability or entitlement, it reasoned that Kentucky would recognize the equitable adoption concept. Since, as discussed previously and as argued by the Secretary, Section 416(h) (2) (A) equitable adoption as it relates to child status under Section 402(d) (1) is not encom-

passed by the Section 402(d) (9) (B) phrase of "legally adopted", *Davis, Bray* and *Rader* are of little precedential value.

Though the case at bar is virtually one of first impression the Court is guided by Congressional pronouncements. In 1960 the Senate Finance Committee reported:

8. Correcting technical flaws in the law

(a) Because of a technical defect in the law, benefits cannot now be paid in cases where a child of a disabled person is born or adopted after the worker becomes disabled, or where a child becomes a stepchild through a marriage occurring after the worker becomes disabled. The bill would correct this defect by providing for the payment of child's benefits to a child who is born, or who becomes a worker's stepchild, after the worker becomes entitled to disability insurance benefits, and to a child who is adopted by a worker within 2 years after the worker becomes entitled to disability insurance benefits, or the child was living with the parent before the onset of his disability. Such proceedings for the adoption of the child are not intended to be limited merely to court proceedings, but also include proceedings and arrangements with licensed adopting agencies or other qualified persons.

S.Rep. No. 1856, 86th Cong., 2d Sess. (1960); 2 U.S.Code Cong. & Ad.News, p. 3643 (1960). The Court in Broddie v. Gardner, 258 F.Supp. 753 (N.D.Ind. 1966), a case involving an after-born child to the disability beneficiary, discusses the above-quoted language and concludes that (1) Congress intended to expand coverage so as to include after-born and after-adopted children and (2) that the added provisos were for the purpose of preventing abuse.[8]

---

8. "While the specific requirements of the proviso are somewhat more restrictive than the language of the Committee Report, the guiding motivation for these 1960 amendments to Section 202(d) (1)

remains clear. Congress intended to expand coverage to include those children born or adopted after their parent became disabled. The restrictions of the proviso were included for the sole pur-

The Senate Finance Committee would seem to agree with the *Broddie* court, when it said:

8. Adoption of Child by Retired Worker

Under present law, a child adopted by a worker who is already retired and getting old-age insurance benefits can become entitled to benefits even though he was not dependent on the worker at the time the latter retired. In contrast, present provisions governing the payment of child's insurance benefits to a child adopted by a person getting disability insurance benefits, and to a child adopted by the surviving spouse of a worker who has died, contain requirements designed to assure that benefits will be paid to such children only when there is a basis for assuming that the child lost a source of support when the worker became disabled or died.

The committee believes that the provisions concerning adoptions by retired workers should be made comparable to those relating to adoptions in other cases so as to provide safeguards against abuse through adoption of children solely to qualify them for benefits, and has included in the bill a provision that would accomplish this result. Under this provision benefits would be payable to a child who is adopted by an old-age insurance beneficiary after the latter becomes entitled to benefits only if the following conditions are met:

(1) At the time the worker became entitled to benefits the child was living with the worker or adoption proceedings had begun;

(2) The adoption was completed within 2 years of the time when the worker became entitled to benefits; and

(3) The child had been receiving at least one-half of his support from the worker for the entire year before the worker became entitled to old-age insurance benefits or, if the worker had a period of disability which continued until he became entitled to old-age insurance benefits, before the beginning of the period of disability.

S.Rep. No. 404, 89th Cong. 1st Sess. (1965); 1 U.S.Code Cong. & Ad. News, pp. 2048–49 (1965).

■ The word "legal" in "legal adoption" may either be used as a word of description or a word of limitation. As the former, it is, of course, innocuous. If it represents the latter, "legal" creates greater difficulty for plaintiff's recovery, and the Court will therefore consider it as such.

■■ As a word of limitation, "legal" must be read in light of its purpose to prevent abuse, i. e., an old-age or disability beneficiary adopting a child with an eye toward increasing his government benefits. Additionally, this Court agrees with all other cases herein cited as to the point that the Social Security Act should be liberally construed. There are many situations where life's involvements lead a person to assume responsibility for a minor without having a legal duty to do so. Motivation for such an act may well emanate from a sense of moral duty or familial responsibility as in a grandparent-grandchild relationship. Whatever the reason for a person's assuming such a responsibility, the costs are the same.

■■ It is not the purpose of this Court to change the requirements of the statute, but rather to fulfill its intent. Broddie v. Gardner, supra at 756. The underlying motive for the Congressional changes to Section 402(d) was to increase coverage of the Child's Insurance Benefits provisions. See Broddie v. Gardner, supra. While protections against abuse of such a statute are nec-

pose of preventing abuse. This court does not have the prerogative of ignoring the requirements enacted by Congress, yet neither should its eyes be closed to the intent which motivated the Congressional action." Broddie v. Gardner, supra at 756.

essary, they are devised in advance of the myriad of situations for which the basic statute was passed but which are precluded by these somewhat arbitrary limitations if construed rigidly. It thus appears that these limitations would necessarily have to be read with flexibility if the statutory purpose is to be fulfilled or Congress acquires a crystal ball. This Court therefore concludes that "legally adopted", for purposes of the Section 402(d) (9) (B) dependency requirement as it supersedes that same requirement in Section 402(d) (3) in the statutory scheme, means a factually existing and continuing parent-child relationship within the specified limitation period created without a view toward economic gain.

It clearly appears from the record in this case that the parent-child relationship comes within the above definition and that plaintiff is entitled to child's benefits. The decision of the Appeals Council is reversed and judgment ordered entered accordingly.