**Mavis SLAUGHTER and Mark Slaughter, infants under the age of twenty-one years, who sue by their mother and next friend, Mamie Slaughter, Plaintiffs,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1026.**

United States District Court
S. D. West Virginia,
Bluefield Division.

Sept. 16, 1968.

Robert W. Hensley, Bluefield, W. Va., for plaintiffs.

Milton J. Ferguson, U. S. Atty., Huntington, W. Va., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying children's insurance benefits to the adopted children of George and Mamie Slaughter. On November 1, 1967, pursuant to the provisions of Section 205(g) of the Social Security Act, this court remanded this case to the Secretary for the purpose of determining whether or not an "equitable adoption" entitling Mark and Mavis Slaughter to child insurance benefits had occurred within the period prescribed by the Act, 42 U.S.C.A. § 402(d). The difficulty with respect to determining the time in which the "equitable adoption" occurred arose as a result of inconsistent statements made by Mamie Slaughter—her testimony at the hearing indicating an agreement to adopt in 1960 while her statement to a representative of the Social Security Administration indicated that the question of adoption had not been discussed until sometime in 1964 or 1965. In view of the objections of plaintiffs' counsel to the effect that the statement indicating discussion of adoption no earlier than 1964 was not in the handwriting of plaintiff Mamie Slaughter, we remanded this case to the Secretary for the specific purpose of determining whether or not such statement was in fact made by Mrs. Slaughter to the representatives of the Social Security Administration. The record having been completed and now before us, we will limit our review to ascertaining whether the Secretary has answered these questions, and whether, as a result of such additional testimony, Mark and Mavis Slaughter are entitled to child's insurance benefits under the Act.

Upon remand a supplemental hearing was held by a hearing examiner on March 20, 1968, at which time the testimony of Mr. William F. Laney, a Field Representative of the Social Security Administration, was obtained, in addition to that of Mamie Slaughter and several other witnesses. Mr. Laney testified that while he was on duty at Welch, West Virginia he had been involved in processing the claim by Mamie Slaughter for child's insurance benefits, and, after reading the statements attributed to Mrs. Slaughter, he was of the opinion that there was nothing contained therein which failed to correspond with his independent recollection of the case. When questioned about the statement of Mamie Slaughter indicating that there was no intent to adopt the children prior to 1964, Mr. Laney testified that he wrote the statement out as he questioned the individuals and that the words used were his. He stated that he had asked questions as prescribed by the claims manual and that he had recorded the answers as

given. While he did not specifically remember reading these statements back to Mrs. Slaughter, he stated that he "always read the statement back to the claimant before they sign it." Mr. Laney testified that while in theory the person interviewed should perhaps write his own statement, in the vast majority of cases such practice was not workable. The Court's own experience as a practicing attorney makes this understandable. According to the testimony of Mr. Laney, the standard procedure adopted in interviewing claimants was for the claims representative to write the remarks of the person interviewed, read this statement back to the person and then have them sign the statement in the signature block provided on the back of the form. To the best of his recollection, this was the procedure which had been followed in processing the Slaughter claim.

In testifying at the supplemental hearing, Mamie Slaughter reaffirmed her testimony at the previous hearing and denied that she had made the remarks attributed to her to the effect that adoption of the Slaughter children was not discussed until sometime in 1964 or 1965. Mrs. Slaughter maintained that the agreement to adopt had been entered into in 1960 and that only their financial position had prevented them from adopting the children at that time. Several other witnesses called on behalf of the plaintiff testified to the effect that in conversations with the natural mother of the Slaughter children in 1960 she had indicated to them that she intended for the Slaughters to adopt her children.

As can be seen from the preceding remarks, the issue for decision in this case relates primarily to the question of the credibility of the several witnesses, particularly that of Mr. Laney and Mrs. Slaughter. The hearing examiner, in denying plaintiffs' claim, expressed the opinion that Mr. Laney's testimony could not be impeached. Mr. Laney, according to the decision of the hearing examiner, gave the impression of an "honest, forthright, extremely competent individual, unmotivated by any form of passion or prejudice." In the view of the hearing examiner Mr. Laney had been concerned solely with accurate reporting of facts. The witness' testimony was unshaken by persistent cross-examination and the hearing examiner accepted "all his statements as true." Needless to say, the testimony of the other witnesses did not, in the opinion of the hearing examiner, fare as well. Vagueness of memories as to some facts as well as the actual sequence of events leading up to the adoption in 1966 led the hearing examiner to the conclusion that Mrs. Slaughter had in fact made the statements attributed to her in the record and that no discussion concerning adoption was had between Virginia Todd, the natural mother of the children, and the Slaughters prior to 1964. After reading the entire case record, we cannot say that the findings of the hearing examiner, adopted by the Appeals Council as the final decision of the Secretary, are not supported by substantial evidence. The crucial issue relates, of course, to the question of the credibility of the several witnesses, and under these circumstances great weight must be given to the conclusion of the hearing examiner. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Smith v. Gardner, 253 F.Supp. 991 (D.C.S.C.1966). This is obviously so since it is the hearing examiner who hears the witnesses testify and who is in a superior position to determine their credibility. Heikes v. Flemming, 272 F.2d 137 (7th Cir. 1959). It has indeed been said that the significance of the hearing examiner's decision depends to a great extent upon the importance of credibility in the particular case. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In this case where the credibility of the witnesses *is* the determinative issue serious error in the reasoning of the hearing examiner would have to be made apparent before this Court would feel compelled to overturn the decision. No such error has been called to our attention, and, in view of the convincing

testimony of the representative of the Social Security Administration, it is our opinion that the conclusion of the hearing examiner with respect to the credibility of the witnesses was a reasonable one.

Accordingly, viewing the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for summary judgment must be granted.[1]

---

[1] Requirements with respect to benefits for adopted children have been liberalized by the 1967 Amendments to the Social Security Act and, as pointed out by the hearing examiner, plaintiffs may be eligible under these new provisions. Section 112(a) of Public Law 90–248. However, it will be necessary for plaintiffs to file a new application to bring themselves within the coverage of the amended provisions since the amendments are applicable only to applications filed after the date of the enactment of the Act.