William MOUNTS, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 2557.

United States District Court
S. D. West Virginia,
Huntington Division.

Oct. 15, 1969.

Toney E. Cline, Charleston, W. Va., for plaintiff.

Wade H. Ballard, III, U. S. Atty., Bluefield, W. Va., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

1. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The 1967 Amendments to the Act imposed the additional requirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

2. Section 205 of the Social Security Act, 42 U.S.C.A. § 405, provides in pertinent part:

"(a) The Secretary shall have full power and authority to make rules and regulations * * * to regulate and provide for the nature and extent of the proofs and evidence and the method of

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on March 1, 1968, awarded the plaintiff a period of disability and disability benefits, but this decision was reversed by the Appeals Council, which denied the claim on January 27, 1969. This decision is the final decision of the Secretary and it holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act.[1] This matter is now before the Court on the parties' cross motions, under Rule 56, for summary judgment.

The Appeals Council determined that under Section 205 of the Social Security Act, 42 U.S.C.A. § 405,[2] plaintiff last

taking and furnishing the same in order to establish the right to benefits hereunder.

\* \* \* \* \*

"(B) The term 'time limitation' means a period of three years, three months, and fifteen days.

"(C) \* \* \*

"(2) On the basis of information obtained by or submitted to the Secretary, and after such verification thereof as he deems necessary, the Secretary shall establish and maintain records of the amounts of wages paid to * * * each individual and of the periods in which such wages were paid * * *.

"(3) The Secretary's record shall be evidence for the purpose of proceedings before the Secretary or any court of the amounts of wages paid to * * * an individual and of the periods in which such wages were paid * * *. The absence of an entry in such records as to wages alleged to have been paid to * * * an individual in any period shall be evidence that no such alleged wages were paid to * * * such individual during such period.

"(4) Prior to the expiration of the time limitation following any year the Secretary may, if it is brought to his attention that any entry of wages * * * in his records for such year is erroneous or that any item of wages * * * for such year has been omitted from such

met the special earnings requirements of the Social Security Act through the quarter ended March 31, 1950. This determination is crucial to the ultimate reversal of the hearing examiner.

Under the Act, 42 U.S.C.A. § 416(i), an individual cannot be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. To satisfy this requirement, the claimant must establish that he suffered from such disaability on or before the last day of his special insured status. Davidson v. Ribicoff, 204 F.Supp. 368 (S.D.W.Va. 1962). Thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act, though such proof need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional functions,"

but that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the administrative finding is supported by substantial evidence and to see that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court on this review is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

Plaintiff was born April 22, 1910, and at the time of the onset of his alleged disability, June 1948, he was thirty eight years of age. While at attended elementary school to the third grade, he is classified as illiterate. He is divorced and has no children. Generally, his vocational history has been that of a coal miner, although plaintiff's work record

records, correct such entry or include such omitted item in his records, as the case may be. After the expiration of the time limitation following any year—

"(A) * * *

"(B) the absence of any entry in the Secretary's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence for the purposes of this subchapter that no such alleged wages were paid to such individual in such period * * *.

"(C) * * *

"(5) After the expiration of the time limitation following any year in which

wages were paid or alleged to have been paid to * * * an individual, the Secretary may change or delete any entry with respect to wages * * * in his records of such year for such individual or include in his records of such year for such individual any omitted item of wages * * * but only—

* * * * *

"(H) to include wages paid during any period in such year to an individual by an employer if there is an absence of an entry in the Secretary's record of wages having been paid by such employer to such individual in such period."

has been sporadic and inconsistent. It appears from the record that he was last employed on a coal buggy handling the cable. His last substantial work was in 1956 and 1957, and in the latter year he ceased work because of an accidental leg fracture. Plaintiff served in the United States Army for approximately three months in 1942 and was given a medical discharge because of a psychoneurosis. This condition, at the time of his discharge, was described as an anxiety reaction manifested by nervousness, weakness, precordial pain, palpitation, dyspnea and tremor of the extremities, without organic basis. Further diagnosis was anxiety in an inadequate personality.

The application that is the subject of this review is the third application plaintiff has filed for a period of disability and disability insurance benefits. His first application, filed March 6, 1961, was denied at all administrative levels with the Appeals Council denying his request for review of an adverse decision of a hearing examiner. His second application, filed September 6, 1963, alleged he became unable to work in March 1957. This application was denied initially, on reconsideration, and his request for a hearing was denied on grounds of *res judicata*, a decision from which he took no further action. In his application in the case at bar, plaintiff originally alleged the onset date of his disability as 1960, but when informed that the Secretary considered him to meet the earnings requirement through the quarter ending March 31, 1950, plaintiff amended his onset date allegation to June 1948. In its amended form, plaintiff's allegation is that he has been unable to work since 1948 because of nervousnes and silicosis.

■ It appears from the record that plaintiff was engaged in substantial work subsequent to March 31, 1950. It was because of this work activity that the hearing examiner, in his decision of March 1, 1968, concluded that plaintiff met the special insured status requirements until March 31, 1957. Moreover, the hearing examiner found plaintiff to be under a disability from February 1, 1957 onward. The Appeals Council, on review, held that the evidence of record failed to establish that additional earnings should be credited to plaintiff's earnings record for 1952 and 1953, at which time he allegedly did some work for a cousin, one Arden Mounts. The statutory rule of Section 205(c) (3) of the Social Security Act, quoted in footnote 2, supra, states that the absence of any entry in the Secretary's records as to wages allegedly paid an individual shall be evidence that no such wages were paid during the period, and the rule has received recent judicial endorsement. Johnson v. Gardner, 401 F.2d 518 (8th Cir. 1968). The Act also provides that after the expiration of the time limitation period, Section 205(c) (1) (B), supra, the absence of a wage entry in the Secretary's records creates a presumption that the plaintiff did not have such earnings. Section 205(c) (4) (B), supra; Thacker v. Gardner, 268 F.Supp. 663 (W.D.Va. 1967), affirmed 387 F.2d 387 (4th Cir. 1967). Therefore, there is a presumption of correctness accorded the Secretary's records that is rebuttable only upon a showing of positive evidence to the contrary. Carqueville v. Flemming, 263 F.2d 875 (7th Cir. 1959); Williams v. Celebrezze, 243 F.Supp. 103 (E.D.Ark. 1965).

■ In the case at bar, the time limitation with respect to 1952 and 1953 has long passed. Furthermore, the evidence presented by the plaintiff, in the opinion of the trier of fact—the Secretary—is not sufficient to overcome the statutory presumption, i. e., that plaintiff did not have earnings other than those reflected in the Secretary's records of his earnings. It has long been the rule that the Secretary is the trier of fact, Underwood v. Ribicoff, supra, and in that capacity he could properly refuse to accept plaintiff's claims as to wages allegedly paid him by his cousin Arden Mounts some sixteen to seventeen years earlier. Sabbagha v. Celebrezze, 345 F.2d 509 (4th Cir. 1965); Slaughter v. Gardner, 292 F.Supp. 568 (S.D.W.Va.1968); Carqueville v. Flem-

ming, supra; Celebrezze v. Zimmerman, 339 F.2d 496 (5th Cir. 1964).

█ In addition, even assuming creditable earnings are shown, Section 205(c) (5) of the Social Security Act, supra, specifically enumerates the conditions under which the Secretary's records may be changed after the expiration of the statutory time limitation, Section 205 (c) (1) (B), supra. Initially, Section 205(c) (5) (A) provides that an omitted item of creditable earnings may be included on a claimant's earnings record only,

"(A) if an application for monthly benefits * * * was filed within the time limitation following such year * * *."

It is apparent from the record that plaintiff's present application, filed in 1966, was filed some ten years after the expiration of the three years, three months, and fifteen days time limitation required by Section 205(c) (1) (B) of the Social Security Act. Therefore, assuming *arguendo* that plaintiff has overcome the statutory presumption by credible evidence, his purported creditable earnings of 1952 and 1953 would, nevertheless, be barred from inclusion on his earnings record by the mandates of Section 205(c) (5) (A) of the Act. Williams v. Celebrezze, supra; Karwowski v. Gardner, 372 F.2d 118 (5th Cir. 1967); Martlew v. Celebrezze, 320 F.2d 887 (5th Cir. 1963). We are of the opinion that the conclusion reached by the Appeals Council that plaintiff last met the special insured status requirements of the Act through the quarter ending March 31, 1950, is supported by substantial evidence of record and, furthermore, that the alleged creditable earnings of 1952 and 1953 are barred from inclusion on the plaintiff's earnings record by operation of law. The case being in this posture, we turn to the question of whether the defendant's decision that plaintiff was not disabled within the meaning of the Social Security Act on or before March 31, 1950, is supported by substantial evidence of record.

█ A searching review of the record as a whole in this case convinces the Court that the plaintiff has failed to sustain the burden of proof in this proceeding, as contemplated by the holdings of Davidson v. Ribicoff, supra, and Thomas v. Celebrezze, supra. Besides the necessity of showing that the impairments existed on or prior to the expiration of his insured status, plaintiff must also show that he had an impairment, or impairments, as defined in Section 223 (d) (3) of the Act, as amended, 42 U.S. C.A. § 423(d) (3), viz.:

"'(A) physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

As was stated by our Fourth Circuit in Laws v. Celebrezze, 368 F.2d 640, 643 (4th Cir. 1966), establishment of a disability and entitlement to benefits is a two step process:

"First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months; and second, there must be a factual determination that the impairment actually renders claimant unable to engage in any gainful employment."

The applicable regulations, 20 CFR 404.-1502(b), place the burden on a claimant of establishing by "medical evidence, and where necessary by appropriate medical tests" that he had medically determinable impairments which "must be the primary reason" for his inability to engage in any substantial gainful activity. Such impairments may be considered "medically determinable" only if they "can be verified by the use of clinical and laboratory diagnostic techniques" and any resulting disability must be shown to · be due to "structural, physiological or psychological changes which can be identified" by. the use of such techniques. 20 CFR 404.1510(a).

Such impairments must also result in a lack of ability to perform "significant functions." 20 CFR 404.1502(b). Moreover, the supporting medical evidence should be "complete enough to support an independent diagnostic, therapeutic and prognostic conclusion" to this effect. 20 CFR 404.1510(b).

The earliest medical evidence in the record concerning plaintiff's condition is the diagnosis stated above when he was discharged from the United States Army for medical reasons in 1942. From May 19, 1944 to August 4, 1944, he was hospitalized at the Veterans Administration Hospital in Huntington, West Virginia, due to complaints of nervousness and pains in the heart and kidneys. It appeared that he had attempted to work in a coal mine after his discharge but he explained that he felt too nervous and could not hold out. He admitted that he had been a heavy drinker prior to his entry into the service, but he denied that he had used alcohol excessively since his discharge. He also denied drug addiction. A mental examination revealed that he was under considerable emotional tension, was tremulous and emotionally unstable. The examining neuropsychiatrist was of the opinion that the diagnosis of alcoholism and drug addiction could be established only from history. The resulting diagnosis was psychoneurosis, anxiety hysteria, treated and improved.

■ These diagnoses are the only medical evidence in the record that antedates the expiration of the plaintiff's insured status of March 31, 1950, and, of course, these conditions fall far short of being "disabling" within the meaning of the Act. Furthermore, it is axiomatic that if a condition becomes disabling after the expiration of a claimant's insured status, it cannot be the basis for a favorable finding of disability. Davidson v. Ribicoff, supra. We recognize the fact that plaintiff may have a progressive impairment and we will consider the post-expiration date medical reports only to the extent that they "throw light" on plaintiff's condition on or prior to March 31, 1950.

Dr. S. G. Zando, in a report dated January 29, 1952, stated that he had examined the plaintiff at the request of the West Virginia Department of Public Assistance. The resulting diagnosis was psychoneurosis and early osteoarthritis of the lower lumbar spinal region, neither condition serious enough to be considered disabling. Dr. Zando was of the opinion that plaintiff was able to perform full time work at his usual job.

On August 20, 1952, Dr. A. H. Henderson, Jr., a general practitioner, examined plaintiff for the West Virginia Department of Public Assistance. He described plaintiff as well developed and with no abnormality of a mental or nervous nature. He felt plaintiff had no major medical impairments and concluded that he was able to do his usual work.

In May of 1954, plaintiff was examined practitioner. Dr. White noted tremor by Dr. E. W. White, Jr., a general hands, head and feet. His diagnosis was post-encephalitic Parkinsonism with a guarded prognosis. Due to the tremor, Dr. White felt plaintiff could not do any work.

Dr. T. J. Holbrook, a neurological surgeon, examined plaintiff on June 14, 1954. This examination revealed he was oriented "and clear." There was noticeable tremor of the arms and legs, and while Dr. Holbrook doubted plaintiff's being able to pass a physical examination for work, he, nevertheless, felt plaintiff should continue to work.

Dr. Zando again examined plaintiff for the Department of Public Assistance on March 31, 1955, and at this time he could find "no disabling pathology" and concluded once more that plaintiff was able to return to his usual job. In a more recent report, July 30, 1959, Dr. Zando diagnosed psychosis, but felt plaintiff was still qualified to do light work under close supervision.

Much later medical reports, far removed in point of time from plaintiff's insured status expiration date, are found

in the record, and while they are in themselves conflicting as to diagnoses and conclusions, they are unanimously devoid of medical data or opinion concerning plaintiff's condition on or before March 31, 1950. Therefore, they are of no probative value in the resolution of the issue before this Court.

It appears certain that plaintiff had a slight mental impairment prior to the expiration of his insured status. However, by the great weight of the objective medical evidence of record, this impairment on or prior to March 31, 1950 did not prevent all gainful work. In fact, this is confirmed by plaintiff's employment in 1956 and 1957, when he had combined earnings of over $3,000.00

▆▆▆ While this Court is fully aware that clinical medical reports are not necessarily dispositive of the question of a claimant's disability, Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965), it is clear that such reports are essential to an obvious interrelation of the four elements of proof the fact finder must recognize in determining a claimant's ability or inability to engage in any substantial gainful activity. Underwood v. Ribicoff, supra. This interrelation includes (1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability as testified to by claimant, and (4) claimant's educational background, work history and present age. Underwood v. Ribicoff, supra. The record shows only the plaintiff's own declaration that he was disabled within the meaning of the Social Security Act. We think such evidence, standing alone, is entitled to little weight. Furthermore, there is substantial evidence in the record on which the Secretary could have based his decision that the plaintiff was not precluded from engaging in all forms of substantial gain-

ful work activity. While it is undoubtedly true that this plaintiff suffered from a slight mental impairment on or before March 31, 1950, yet it is well established that disability under the Social Security Act means the total inability to engage in any substantial gainful activity, including work of a less arduous nature than the applicant's usual employment. Hicks v. Flemming, 302 F.2d 470 (5th Cir. 1962), *cert. den.* October 15, 1962, 371 U.S. 868, 83 S.Ct. 132, 9 L.Ed.2d 106; Witherspoon v. Celebrezze, 328 F.2d 311 (5th Cir. 1964).

▆▆▆ Thus, considering all the medical evidence, as well as the testimony of the plaintiff, we cannot in good conscience say that the Secretary's finding with respect to plaintiff's condition is not supported by substantial evidence of record.

Accordingly, after a searching review of the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary, that is, the evidence failed to establish the claim asserted. Therefore, the defendant's motion for summary judgment must be granted.