Grover H. LUCAS, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.

Civ. A. No. 70-C-115-A.

United States District Court, W. D. Virginia, Abingdon Division.

April 5, 1971.

Robert T. Winston, Jr., Norton, Va., representing the plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., representing the defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This cause involves the plaintiff's attempt to establish a period of disability under 42 U.S.C. § 416(i) and to obtain social security disability benefits under 42 U.S.C. § 423. His claim for benefits was denied at all levels of the administrative process and the Appeals Council's rejection of his appeal became the final decision of the Secretary on August 28, 1970. Within the proper period suit was commenced in this court pursuant to 42 U.S.C. § 405(g) to overturn the Secretary's decision.

The plaintiff is another of those unfortunate individuals in this area who worked in a coal mine until it was worked out and who now has neither employment nor income. Although Mr. Lucas is able to read and write, he only progressed through about the fifth grade in school. He served in the Army during World War II and subsequently worked approximately twenty years in the mines. His last employment was with a discount retailing operation where he worked as a combination nightwatchman and janitor. The termination of this employment in May 1968 he variously ascribed to blackout spells and shortness of breath. A report of a contact with the manager of the store states that Lucas was replaced by another applicant who it was felt would do a more satisfactory job.

Before the hearing examiner the claimant stated that his main problems were blackout spells and shortness of breath. He recounted that sometimes he would have some warning of a coming spell and sometimes not, but that he would usually be rendered unconscious for a period of fifteen to twenty minutes. The claimant's wife and a neighbor also testified in support of his evidence about his physical difficulties. The plaintiff's testimony was somewhat inconsistent in that at one point he stated that he had not had any spells since the previous Fall and at another time that he had suffered a spell the very morning of the hearing. In spite of his testimony concerning these spells, Mr. Lucas admitted that he drove a car frequently for short distances. A report of a contact with the Division of Motor Vehicles indicated that in 1967 when applying for a driving permit the claimant denied the existence of epilepsy or any condition which might make driving dangerous.

In April and May of 1969 the claimant spent over five weeks in the Mountain Home Hospital in Tennessee, a Veterans' Center. A history of dizzy spells and blackouts was noted on the hospital summary but no explanation of the condition was offered. During his stay in the hospital the plaintiff received complete dentures and an intradermal nevus of the right nasal ala was removed. In addition a cystoscopy and a sigmoidoscopy was performed. Diagnoses of hypochromic anemia, secondary to iron deficiency; chronic alcoholism; Dupuytren's contracture of the right hand; and bilateral bronchial pneumonia were made. Mr. Lucas was discharged improved with the suggestion that he refrain from drinking.

Claimant was also examined by Dr. M. H. Onder, an internist in Norton, Virginia. Dr. Onder directed his attention to the complaints about blackouts but he was unable to determine the origin of this trouble and suggested that a neurological examination be performed. His thorough medical examination of the claimant failed to yield any particularly remarkable results but he reported the following diagnoses: 1. convulsive seizures, etiology unknown; 2. chronic alcoholism; 3. probable alcoholic cirrhosis of the liver; 4. mild anemia, probably related to chronic liver disease and malnutrition; 5. Dupuytren's contracture of the right hand; 6. varicose veins, superficial, bilateral; and benign prostatic hypertrophy. Dr. Onder speculated that the "(a)ssociation of the facial nevus with convulsions and headaches may suggest Sturge-Weber syndrome" but none of the later neurological examinations gave substance to this possibility.

A letter from Dr. John H. Dellinger dated March 17, 1970 states that a chest x-ray of the claimant was performed which "did not show any particular lung pathology except for some fibrosis." Dr. Dellinger did not otherwise examine the plaintiff or subject him to other tests.

Also in the record is a report dated April 23, 1970 of an examination conducted by a neuropsychiatrist, Dr. Pierce D. Nelson of Wise, Virginia. Dr. Nelson examined the claimant thoroughly and reported the following conclusions:

> In general we have a normal neurological examination. The history suggests and is compatible with a seizure disorder, etiology undetermined, [which] may be due to long continued use of alcohol, or premature aging and arteriosclerotic condition but at any rate we should clarify it with an electroencephalogram and a brain wave test and skull x-rays.

X-rays of the skull were made and interpreted by Dr. Lee J. Paul who reported impressions of (1) negative examination of the skull and (2) maxillary sinusitis.

On May 11, 1970 Mr. Lucas was examined at the Daniel Boone Clinic in Harlan, Kentucky for an internist's evaluation of the claimed respiratory impairment. Another thorough examination was made which included atempted pulmonary function studies. Dr. Gilbert L. Hamilton stated that they were not successful in securing sufficient patient cooperation to obtain reportable results in the pulmonary function tests but the results in the arterial blood gas studies were apparently felt to be unremarkable. Dr. Anthony F. Leger, who conducted the overall examination, stated in conclusion that: "I do not believe that this patient has any evidence of any significant respiratory impairment."

In a final effort to obtain medical substantiation of the alleged blackout spells, the claimant was sent at the hearing examiner's suggestion to Duke University Medical Center where he was examined by Dr. Robert L. Green, Jr., a specialist in psychiatry and neurology. An electroencephalogram was made which yielded "perfectly normal" results. Dr. Green concluded his brief report:

> This EEG is within normal limits. I can see nothing in this tracing to confirm a diagnosis of convulsive disorder.

This report concluded the medical evidence which was presented for the consideration of the hearing examiner.

Both parties have moved for summary judgment pursuant to Rule 56 and the only question before the court is whether the Secretary's denial of benefits is supported by substantial evidence, 42 U.S.C. § 405(g). These social security disability cases are difficult ones for the court because, according to the statutory requirements, denial of benefits is often justified even when the court is aware that the claimant may effectively be precluded from any employment available in his area. The scope of review is limited to the inquiry concerning the substantial nature of the evidence supporting the Secretary.

Although the claimant has been subjected to a number of medical examinations, no satisfactory explanation of the alleged blackouts has ever been obtained. None of the doctors have been able to determine any abnormality causing this disturbance. Whether or not a disabling impairment may in fact exist, 42 U.S.C. § 423(d) (3) requires:

> For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques.

The impairments must be medically verified. See Mounts v. Finch, 304 F.Supp. 910 (S.D.W.Va.1969). Where, as in this case, doctors are unable to substantiate the claimant's allegation of impairment, benefits are precluded.

In addition to the absence of any medical confirmation of an abnormality precipitating the alleged blackouts, there was no medical evidence of a substantial respiratory impairment. The court is

forced to conclude that the plaintiff has failed to produce evidence of impairments resulting from medically demonstrable anatomical, physiological, or psychological abnormalities.

In accordance with the foregoing views, it is the judgment of this court that summary judgment should be and hereby is granted to the defendant.