Willie A. SMITH, o/b/o Emerson G. Smith
and Willie A. Smith (Wage Earner),
Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 71-155-CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

June 16, 1972.

E. Lee Schlaegel, Jr., Madison, W. Va., for plaintiff.

John A. Field, III, U. S. Atty., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

KNAPP, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, which denied plaintiff's application for entitlement to child's insurance benefits for the adopted son of wage earner, Willie A. Smith, under the provisions of Sections 202(d) and 216(e) of the Act, 42 U.S.C.A. §§ 402(d) and 416(e).

Defendant has moved the Court for summary judgment pursuant to Rule 56(b).

The facts are not in dispute. The wage earner, Willie A. Smith, applied for retirement insurance benefits by application dated May 19, 1967, and was awarded benefits beginning with the month of February, 1967. The child claimant, Emerson G. Smith, is the natural grandson of the wage earner and is the child, born out of wedlock, of wage earner's daughter, Isabelle Boling Chambers, nee Smith. The child was born on the 17th day of February, 1952, at Mad-

ison General Hospital, Madison, West Virginia. The child's mother shortly thereafter (approximately one month) married one Bert Boling, now deceased, and since said husband apparently objected to her keeping said child, the child's physical custody was placed in her parents, the wage earner and his wife, when the child claimant was approximately five months of age. The child thereafter remained in wage earner's home until reaching maturity. At the time of the hearing, December 16, 1970, the child claimant had attained the age of 18 years, had graduated from high school and had gone to live with wage earner's daughter in Cleveland, Ohio.

The wage earner was the sole support of said infant child with no contributions being made by the child's natural mother or her husband. No efforts were made to adopt the child; nor was adoption discussed between the wage earner and the natural mother until shortly prior to December 11, 1968 (Exhibit 13). The mother indicated that she would have signed formal adoption papers at any time but had never been asked to do so (Exhibit 14—Dated December 11, 1968). The child's natural mother further stated that she had given the child to her mother "to raise" and "had never tried to take him back."

The wage earner testified that the natural mother stated when the child was "given" to him and his wife that: "Daddy and mother, I want you to take him and keep him. My husband won't keep him. He won't be good to him. I'll have to do something with him. I want you to take him and he belongs to you."

It was related in the testimony that some effort had been undertaken by wage earner with the assent of the natural mother of said infant approximately one year prior to the date of the administrative hearing (probably 1969) to institute formal adoption proceedings when they consulted an attorney, Clarence E. Hall. At that time, the testimony shows, the child's mother told the attorney that she agreed to an adoption. Plaintiff further stated that due to a lack of money no adoptive steps were undertaken at that time. However, whether this was before, or after, March, 1969, is uncertain from the record. Approximately one year later, adoption proceedings were instituted (officially—April 17, 1970) through the assistance of plaintiff's attorney in this proceeding and was apparently undertaken without the necessity for the prepayment of fees or costs. The existence of a formal written consent as required in formal adoption proceedings was a matter of some evidentiary concern, at least to the Hearing Examiner. From the plaintiff's testimony it appeared that neither the wage earner nor the child's natural mother were aware of a written document. It was their contention that the oral consent had been present all the time.

The child's natural mother did sign formal adoptive consent papers on January 6, 1970, and the child, Emerson Garrison Smith, was declared adopted to Willie Smith (wage earner) and Amanda Smith, his wife, by the Circuit Court of Boone County, West Virginia, by decree entered on April 17, 1970.

The reason advanced for eligibility in the child's application was that he had been "equitably adopted." The doctrine of equitable adoption was advanced by plaintiff's attorney throughout the administrative process, and was the theory upon which the Hearing Examiner made his findings and conclusions.

The Hearing Examiner found that the child claimant had not been legally adopted by wage earner before the end of a 24-month period beginning with the month after the month in which Willie A. Smith became entitled to old-age insurance benefits, 42 U.S.C.A. § 402(d)(9) (B); that Emerson G. Smith was residing with, and was dependent upon, the wage earner at the time the application in this case was filed (December 11, 1968); and that the child was not "equitably adopted" by wage earner.

The Hearing Examiner correctly concluded that for the child claimant to be eligible it was mandatory for said plaintiff to show an equitable adoption which would have come into existence prior to March, 1969.

In proceedings for child insurance benefits under the Social Security Act, the Secretary of Health, Education and Welfare has heretofore conceded that the concept of "equitable adoption" would, where warranted by the facts, be applied by the courts of West Virginia, although there are no decided cases in West Virginia that indicate, absent compliance with the West Virginia adoption statute (W.Va.Code, 48–4–1 et seq.), that a child can legally be considered the adopted child of another. Judge Christie, of this District, in his often cited decision of original impression in this jurisdiction, Davis v. Celebrezze, 239 F. Supp. 608 (S.D.W.Va.1965), stated that the necessary ingredients to apply the doctrine of equitable adoption, according to those decisions in states where the doctrine is recognized, require a written or oral agreement showing the intention of the parties to adopt, and that such contract or agreement must be proven by clear, strong and satisfactory evidence and be supported by a consideration. Also see Glaze v. Richardson, 438 F.2d 120 (5th Cir. 1971); Hayes v. Secretary of Health, Education and Welfare, 413 F.2d 997 (5th Cir. 1969); Spiegel v. Flemming, 181 F.Supp. 185 (N.D.Ohio1960); Rader v. Celebrezze, 253 F.Supp. 325 (E.D.Ky.1966). It has also been held that an oral agreement to adopt may be shown by the acts, conduct and admissions of the parties. Smith v. Secretary of Health, Education and Welfare, 431 F.2d 1241 (5th Cir. 1970); Davis v. Celebrezze, supra; Meadows v. Richardson, (S.D.W.Va.1971), Commerce Clearing House, Inc., Unemployment Insurance Reporter, Transfer Binder § 16,-262; Slaughter v. Gardner, 292 F.Supp. 568 (S.D.W.Va.1968).

 The facts here are sufficient to constitute a custodial agreement or relinquishment by the natural mother so that the grandparents could have been successful in a habeas corpus proceeding to retain custody of said infant. Cunningham v. Barnes, 37 W.Va. 746, 17 S.E. 308; Green v. Campbell, 35 W.Va. 698, 14 S.E. 212; State ex rel. Lipscomb v. Joplin, 131 W.Va. 302, 47 S.E.2d 221. Normally, however, even in those cases where custody is granted to persons other than the natural parents the state court decree does not alter the legal parent-child relationship other than as to custody; and normally such grant of custody is not ordered to be permanent. See State ex rel. Lipscomb v. Joplin, supra; Stout v. Massie, 140 W.Va. 731, 88 S.E.2d 51; Bell v. Eicholtz, 132 W.Va. 747, 53 S.E.2d 627. Mere relinquishment does not serve as a basis for adoption, Bell v. Eicholtz, supra; and custody in a third person is not tantamount to a divestiture of the right of a parent to his child. Whiteman v. Robinson, 145 W.Va. 685, 116 S.E.2d 691.

However, the custodial arrangement in the instant case has not been shown to be equivalent to an agreement to adopt.

If reliance is to be placed upon the alleged oral consent for adoption made before Attorney Clarence E. Hall, or if a written consent was signed in his presence the date thereof is quite relevant. Plaintiff's attorney indicated that a statement would be obtained from Mr. Hall by plaintiff's counsel (T–32) and requested a period of three weeks to obtain such a statement (T–35), but this was never done or, if so, was not made a part of the record. The written consent used in the adoption proceeding, Exhibit 17, was received subsequent to the hearing and plaintiff's attorney indicated that it was probably the same signed by the child's natural mother before Mr. Hall, the Attorney. This is obviously not accurate unless, of course, the same was an incomplete document to which missing information was added later. It was not signed before a notary public

until January 6, 1970. The consent shows the natural mother's age to be 38 years in January, 1970. If she were 18 years of age (T–25) when the child was born February 17, 1952, she, of course, would not be 38 until 1972. If the consent was signed in 1967 (the crossed out date shown on same), she would have been only 33 years of age.

Two other factors seem relevant as to whether the parties considered that an agreement to adopt had been entered into between them. Plaintiff, when asked specifically by the Hearing Examiner that if the natural mother had come to him and had asked for the return of the child to her would he, the plaintiff, have let her have the child back, answered that he would in these words: "Well, I would've had to. He wasn't adopted." (T–30). Furthermore, a comparison of the information furnished in plaintiff's application for retirement benefits (Exhibit 8, May 19, 1967) and his application for child's benefits for his natural son, David Smith, filed the same date (Exhibit 9) clearly indicates that, at that time, he considered himself as having only one child then unmarried and under 18 years, to-wit, the said David Smith, even though the application forms executed by him specifically request information as to all children natural, adopted or step.

It is this Court's considered opinion that the essential requisites for "equitable adoption" were not proven by the required clear, strong and satisfactory evidence, and that no agreement of an adoptive intent existed between the parties prior to the formal adoption proceeding. The child claimant therefore is not entitled to child's insurance benefits based on the earning record of the wage earner, Willie A. Smith. Inasmuch as the Court finds that the Secretary's decision is based upon substantial evidence and is correct, the defendant's motion for summary judgment will be granted. Counsel may prepare an appropriate order incorporating this opinion by reference therein.