Lillian WILLIAMS, Appellant,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Appellee.

No. 1017, Docket 74–1622.

United States Court of Appeals, Second Circuit.

Submitted June 9, 1975.

Decided Sept. 26, 1975.

---

George B. Schatz, Lynbrook, N. Y., for appellant.

Carl I. Stewart, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., on the brief), for appellee.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

This appeal involves the entitlement of a child to insurance benefits under Section 202(d) of the Social Security Act, 42 U.S.C. § 402(d).[1] That entitlement is dependent on the status of the infant as a "child" of the deceased wage earner under Section 216(e) of the Act, 42 U.S.C. § 416(e).[2] The wage earner here, James Williams, was foreclosed by the law of his domicile, West Virginia, from legally adopting the infant here, his grandson Wendell Lee Williams. West Virginia requires a six months' waiting period before adoption proceedings may be even initiated,[3] and James Williams died two months after his grandson was born. A hearing examiner held, however, that the infant was "equitably adopted" under the law of West Virginia by his grandfather, and hence that he may be deemed under § 216(e) to be the legally adopted child of the wage earner.[4] The Appeals Council of the Social Security Administration, without specifying whether it was talking about the West Virginia law of "equitable adoption," re-

---

1. 42 U.S.C. § 402(d) provides:

   (1) Every child (as defined in Section 416(e) of this title) of an individual . . . who dies a fully or currently insured individual, if such child . . .
   (C) was· dependent upon such individual
   . . .
   (ii) if such individual has died, at the time of such death . . . shall be entitled to a child's insurance benefit.

2. Section 216(e) of the Social Security Act, 42 U.S.C. § 416(e), provides:

   (e) The term "child" means (1) the child or legally adopted child of an individual . . . . For purposes of clause (1), a person shall be deemed as of the date of death of an individual, to be the legally adopted child of such individual if such person was at the time of such individual's death living in such individual's household and was legally adopted by such individual's surviving

spouse after such individual's death but only if (A) proceedings for the adoption of the child had been instituted by such individual before his death, or (B) such child was adopted by such individual's surviving spouse before the end of two years after (i) the day on which such individual died . . ..

3. 14 W.Va.Code § 48–4–1(b) provides:

   No petition for an adoption shall be made or presented until after the child sought to be adopted shall have lived in the home of the adopting parent or parents for a period of six months.

4. The adoptive mother, Lillian Williams, the infant's grandmother, was held entitled to mother's benefits. This entitlement turns on the same questions presented concerning the child's benefits.

versed the hearing examiner and denied benefits on the basis that "[t]here can be no equitable adoption without sufficient lapse of time so that the child could have been legally adopted under applicable state law before the wage earner's death." · The Appeals Council also held that the fact that the grandmother, Lillian Williams, did adopt the child *three years* after her husband's death was immaterial. It made no mention of the hearing examiner's finding that she was unable to do so within the two years referred to in Section 216(e)(1)(B)(i) of the Act, 42 U.S.C. § 416(e)(1)(B)(i), because she had no funds, was unemployed and unable to defray the expenses of a West Virginia adoption proceeding.[5] Appellant's petition to review the Appeals Council ruling was denied by the United States District Court for the Eastern District of New York, Walter Bruchhausen, *Judge,* without discussion of the legal points, on the basis that it was supported by substantial evidence. We reverse.

The facts are simple, compelling and not in dispute. The infant was born on January 29, 1958, in James and Lillian Williams' West Virginia home, the son of their 14-year-old unmarried, and sometimes institutionalized daughter, Geraldine. The child has lived with his grandparents all his life and at all times he was treated and supported financially by them as if he were their child. The doctor who delivered him, the mother, other members of the family, and friends all corroborated the immediate and constant intention of the grandparents to adopt Wendell because of his mother's age and mental impairments. Indeed, when Wendell was less than two months old, his grandparents went to the local courthouse to commence formal proceedings, but were advised of West Virginia's mandatory six months' waiting period prior to the filing of all petitions for legal adoption.

Shortly thereafter, on March 11, 1958, James Williams died of a cerebral hemorrhage. With a resultant lack of funds, Lillian Williams, his wife and Wendell's grandmother, could not pursue formal adoption procedures until more than two years after her husband's death. The legal adoption proceedings were pursued to completion on November 13, 1961.

The Secretary argues that under Section 216(e)(1), note 2 *supra,* the child, Wendell, could not be "deemed" to be James Williams' legally adopted child within the meaning of subparagraph (A) since "proceedings for the adoption of the child" had not been "instituted by [James Williams] before his death. The Secretary also maintains that subparagraph (B) of Section 216(e)(1) cannot apply here since Wendell was not "legally adopted by [James Williams'] surviving spouse" before the end of two years after his death. The Secretary further argues that there could be no "equitable adoption" by James Williams under, *e. g., Davis v. Celebrezze,* 239 F.Supp. 608 (S.D.W.Va.1965), since West Virginia law imposes a six-month waiting period before adoption proceedings can be commenced, 14 W.Va. Code § 48–4–1(b), and the law of "equitable adoption" may apply only if the adoption in question could have been legally effected. *Spiegel v. Flemming,* 181 F.Supp. 185, 188–89 (N.D. Ohio 1960). Here no legal adoption could have been effected by James Williams during his lifetime since his death occurred prior to the expiration of the six months' waiting period.

While respectable arguments to the contrary of each of the first and third points may be made,[6] we need not decide

---

**5.** The case is here because appellant, Lillian Williams, moved to New York.

**6.** Under a generous reading of the Social Security Act, it might be argued that "proceedings" were commenced by the grandfather before his death by going to the West Virginia court seeking to file the necessary papers.

And under *Meadows v. Richardson,* 347 F.Supp. 154 (S.D.W.Va.1972), and *Davis v. Celebrezze,* 239 F.Supp. 608 (S.D.W.Va.1965), there was clearly the requisite intent and conduct on James Williams' part essential to call the doctrine of "equitable adoption" into play. Under this view the legal disentitlement brought about by the six-month waiting period

the issues they raise, for here it is clear enough under Section 216(e)(1)(B) that Lillian Williams, the appellant and the child's grandmother, did equitably adopt Wendell within two years after James', the wage earner's death.

The concept of adoption in equity is recognized both by the Secretary and by courts for the purpose of allowing benefits absent strict compliance with statutory requirements. *Broussard v. Weinberger,* 499 F.2d 969 (5th Cir. 1974) (equitably adopted child entitled to Social Security Act life insurance benefits); *Smith v. Secretary of Health, Education and Welfare,* 431 F.2d 1241 (5th Cir. 1970) (equitably adopted child entitled to disability insurance benefits); *Davis v. Celebrezze, supra,* 239 F.Supp. at 610–11 (equitably adopted child entitled to child insurance benefits).

Under Section 216(e)(1)(B) the child, Wendell, may be deemed to be the "legally adopted child" of the wage earner James Williams if "such child was adopted" by Lillian Williams within two years of James' death. The questions for us are whether there was an equitable adoption by the grandmother, Lillian Williams, within two years of the death of her husband, the wage earner, under West Virginia law and whether an equitable adoption by the spouse within two years satisfies the Section 216(e) requirements.

■ The equitable adoption doctrine is an established tradition in West Virginia: *Smith v. Richardson,* 347 F.Supp. 265 (S.D.W.Va.1972); *Meadows v. Richardson,* 347 F.Supp. 154 (S.D.W.Va.1972); *Pittsenbarger v. Richardson,* 345 F.Supp. 1281 (S.D.W.Va.1972); *Slaughter v. Gardner,* 292 F.Supp. 568 (S.D.W.Va. 1968); *Davis v. Celebrezze, supra.*

■ The undisputed evidence requires the conclusion that an equitable adoption of Wendell by Lillian under West Virginia law did take place. After Wendell's statutorily required six months of living in the Williams home, that is to say, after July 29, 1958, there was no impediment under West Virginia law to Wendell's legal adoption by his grandmother, Lillian Williams, and thus no impediment to the occurrence of equitable adoption. *See Spiegel v. Flemming, supra.*

The acts and conduct of the parties here, Lillian and her daughter Geraldine, the 14-year-old mother, provide the requisite "clear, strong, and satisfactory evidence" that it was the intention of both the adopting and real parent in mutual, though unwritten, agreement that Lillian Williams adopt Wendell. *See Meadows v. Richardson, supra.* The hearing examiner found that

> [s]ubsequent to the birth of the child . . . the mother of the child, Geraldine Williams, and the claimant and the wage earner agreed among themselves that because of the youth of the mother of the child, and her mental impairments that in the best interest of the child the wage earner and the claimant would adopt this child as their own.

Although the hearing examiner focused in his findings upon the agreement between the parties before the wage earner's death, the only evidence is that the same agreement and intentions of the mother and grandmother prevailed six months after the birth of the child and constitute clear, continuing, unchallenged evidence of an equitable adoption at that time. Between the time of the wage earner's death and the ultimate le-

should not prevent equity from regarding as done that which should be done. This would hold true at least as regards benefits payable after January, 1968, in the nonbinding, if enlightening, view of the General Counsel of HEW. His opinion is based on the legislative history pertaining to the 1968 Amendments, Pub.L.No.90–248, §§ 150a, 156(b), which added the alternative subparagraph (A) where adoption proceedings were commenced in the

wage earner's lifetime. *See* H.R.Rep.No.544, 90th Cong., 1st Sess. 52; S.Rep.No.744, 90th Cong., 1st Sess. 93, U.S.Code Cong. & Adm. News, 1967, p. 2834. *But cf. Spiegel v. Flemming,* 181 F.Supp. 185 (N.D.Ohio 1960) (trial adoption commenced, but legal adoption subject to adjustment), *and see Davis v. Celebrezze, supra,* 239 F.Supp. at 613.

gal adoption in November, 1961, and indeed until the date of the hearing, the child lived solely with his grandmother and was supported wholly by his grandmother; he was never even informed that his natural mother was Geraldine. As in *Davis v. Celebrezze, supra,* completion of formal adoption proceedings prior to November, 1961, was "only prevented from taking place earlier by the . . lack of money to pay the costs of the adoption . . . ." 239 F.Supp. at 611–12.

The question remaining for decision, then, is whether Congress intended in Section 216(e)(1)(B) to require that a child, to be "legally adopted by [the wage earner's] surviving spouse," be adopted in formal court proceedings within the two-year period of that provision, or whether it is sufficient that the law of the locality recognize the concept of equitable adoption as a part of its adoption law, and that the child be equitably adopted, without formal proceedings, within the two-year period. We take the latter interpretation in the light of the remedial policies underlying the Act as a whole, as to which see, *e. g., Norton v. Richardson,* 352 F.Supp. 596 (D.Md.1972); *Branch v. Finch,* 313 F.Supp. 337 (D.Kan.1970).

The legislative history of the Act reveals little of specific moment to the narrow problem of construction we have here. The Senate Report on the 1958

Act which added the original language of subparagraph (B) relating to adoption by the wage earner's surviving spouse does not discuss whether the phrase "legally adopted" was intended to encompass all adoptive relationships which have legal efficacy under state law or was designed to prescribe the manner in which the relationship is created.[7] Congress knows full well, however, how to spell out what it means when it wants to require adoption by formal proceedings as it did in Section 202(d)(8), 42 U.S.C. § 402(d)(8),[8] or in the 1972 amendments to the first sentence of Section 216(e) which treat a grandchild as a child if "legally adopted after the death of [the grandparent] by [the grandparent's] surviving spouse *in an adoption that was decreed by a court of competent jurisdiction within the United States."* 42 U.S.C. § 416(e)(3)(B) (emphasis added).[9] The phrase "legally adopted" as used in Section 216(e)(1)(B) which we are construing carries no such modifying phrase specifying that formal adoption proceedings are required. From this it could well be deduced that the term "legally adopted," by itself, incorporates no mandatory notion of formal proceedings, and can include children who have obtained a legal adoptive status through the doctrine of equitable adoption.

There is an entire body of case law which has interpreted the phrase "child" as it appears in the first clause of the

---

**7.** S.Rep.No.2388, to accompany H.R. 13549, *quoted in* 1958 U.S.Code Cong. & Admin.News at p. 4332, states:

(3) Benefits for an adopted child after the worker's death

An adoptable child living as a memuer of a worker's family and supported by him is, from the point of view of the purposes of the social security program, just as much in need of replacement of the support the child had received from the worker as is the worker's own child. If after the worker's death the surviving spouse adopts the child, the child should, for purposes of receiving child's insurance benefits, be treated as an adopted child of the deceased worker. The committee-approved bill provides for payment of benefits to a child in such cases if at the time of the worker's death the child was a member of the worker's household, if the child was not being supported by any other person, and if the worker's spouse adopts the child within 2 years after the worker dies.

**8.** 42 U.S.C. § 402(d)(8)(D) provides eligibility for certain benefits only to children who are "legally adopted by [an eligible] individual in an adoption decreed by a court of competent jurisdiction within the United States."

**9.** It is only of passing interest here to note that certainly as of the effective date of the 1972 amendment, benefits payable for months after December, 1972, Wendell would to all intents and purposes qualify as James' grandchild since a formal decree had been entered and his mother, Geraldine, was not making regular contributions to his support at the time of James' death, thus satisfying the other requirement of the 1972 amendment.

first sentence of Section 216(e)—"The term 'child' means (1) the child or legally adopted child of an individual"—to include an equitably adopted child. Under this view the bare term "child" includes one in an adoptive relationship having legal efficacy under state law.[10] *See, e.g., Broussard v. Weinberger, supra; Smith v. Secretary of Health, Education and Welfare, supra; Smith v. Richardson, supra; Meadows v. Richardson, supra. Cf. Hall v. Richardson,* 362 F.Supp. 662 (S.D.Tex.1973) (equitably adopted child entitled to retirement benefits); *Holman v. Richardson,* 323 F.Supp. 606 (E.D.Tex.1970) (equitably adopted child entitled to old age benefits). *But cf. Glaze v. Richardson,* 438 F.2d 120 (5th Cir. 1971) (no contractual relationship); *Hayes v. Secretary of Health, Education and Welfare,* 413 F.2d 997 (5th Cir. 1969) (no consent by natural parents); *Rader v. Celebrezze,* 253 F.Supp. 325 (E.D.Ky. 1966). On their face these cases would seem to support a construction of the phrase "legally adopted child" to include one equitably adopted, that is, in the legal relationship of a child under the law of the state. The difficulty these cases present, however, is that some of them have construed the phrase "legally adopted" as it appears elsewhere in the Social Security Act in the narrow sense of a completed formal adoption procedure. *Craig v. Finch,* 425 F.2d 1005 (5th Cir. 1970), gave such a construction to what was then Section 202(d)(9)(B), relying upon congressional contemplation of "proceedings" recognized by law in Section 202(d)(8). *See* 425 F.2d at 1007 n.4, 1008–09. *Smith v. Secretary of Health, Education and Welfare, supra,* does the

same in respect to Section 202(d)(8)(D), 42 U.S.C. § 402(d)(8)(D), not surprisingly, however, since that statute specifically requires, note 8 *supra,* that the child be "legally adopted . . . in an adoption decreed by a court of competent jurisdiction within the United States."

In our case, however, unlike in *Craig* and *Smith,* the term "legally adopted" is not cabined by any prerequisite of formal proceedings. To the contrary, Section 216(e)(1)(B) merely requires that the "legally adopted child" be "adopted by such individual's surviving spouse" within the two years following the insured's death. As we believe the court in *Craig* realized, the remedial purposes of Section 216 do not support a niggardly construction of the term "legally adopted" as used in Section 216(e)(1), *see Craig v. Finch, supra,* 425 F.2d at 1008, note 10 *supra.*[11] Absent some express indication of congressional intent to impose formal procedural requirements on the breadth of that term, we do not believe that an equitable adoption, which is given full legal effect under state law, should be denied status as a legal adoption for the purposes of Section 216(e)(1)(B). Had Congress meant to burden access to benefits for adopted children under that section by requiring adherence to some formal court proceeding, it would have used language no less explicit than it used in Section 202(d)(8), 42 U.S.C. § 402(d)(8), or in the 1972 amendments to the first clause of Section 216 or even in Section 216(e)(1)(A), where initiation of "proceedings" is required. Section 216(e)(1)(B) stands without reference to any adoption decree by a court of compe-

---

**10.** This has usually been done in the context of determining whether the child would satisfy the state law inheritance test of Section 216(h)(2)(A), 42 U.S.C. § 416(h)(2)(A):

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts . . . of the State in which [the insured individual] was domiciled at the time of his death . . . ..

This section has been said to limit the scope of the term "child" in Section 216(e). *Craig v. Finch,* 425 F.2d 1005, 1008 (5th Cir. 1970).

**11.** The Fifth Circuit, in *Glaze v. Richardson,* 438 F.2d 120, 121 (5th Cir. 1971), has even questioned the propriety of limiting the term "legally adopted" to cases involving formal proceedings where the statute itself, then Section 202(d)(9), refers to a requirement of such proceedings. We need not go so far to find Wendell eligible under Section 216(e)(1)(B) in this case.

tent jurisdiction or to the completion of proceedings within the two-year period.[12]

For these reasons, we conclude that the requirement that Wendell Williams be "legally adopted" by his grandmother within the meaning of Section 216(e)(1)(B) was fulfilled when, within the two-year time limit of that provision, the adoption became fully legal and enforceable under West Virginia law under the doctrine of equitable adoption. Accordingly, Wendell qualifies under Section 216(e) for the benefits there made available.

We reverse and remand to the district court with instructions to enter judgment awarding benefits in accordance with this opinion.

VAN GRAAFEILAND, Circuit Judge (concurring):

Because our holding accords with the remedial purposes of the Social Security Act, I concur. I must, however, express my concern over the greatly expanded concept of the doctrine of "equitable adoption" which is emerging as a result of this and similar Social Security decisions. *See, e. g., Broussard v. Weinberger,* 499 F.2d 969 (5th Cir. 1974); *Smith v. Secretary of Health, Education and Welfare,* 431 F.2d 1241 (5th Cir. 1970).

Traditionally, the doctrine of equitable adoption has served only as the basis for a claim of property rights against the estate of a deceased would-be adopter, and an agreement to adopt has not been legally enforceable during the lifetime of the adoptive parent. The relationship of parent and child is a closely personal one; and, as a general rule, equity will not enforce a contract to create such a relationship. Where, as in West Virginia, there exists a statutory scheme of adoption, the statute itself precludes the court from compelling performance of a

non-statutory agreement to adopt. *Erlanger v. Erlanger,* 102 Misc. 236, 168 N.Y.S. 928 (Sup.Ct.), *aff'd without opinion,* 185 App.Div. 888, 171 N.Y.S. 1084 (1st Dep't. 1918); *Besch v. Murphy,* 190 Md. 539, 544, 59 A.2d 499, 501 (1948); Note, *Equitable Adoption: They Took Him Into Their Home And Called Him Fred,* 58 Va.L.Rev. 727, 730 (1972).

So long as appellant was alive, it is unlikely that, in matters unrelated to the Social Security Act, the Courts of West Virginia would have treated her grandson as her adopted child prior to the culmination of statutory adoption proceedings. The doctrine of equitable adoption would have come into play, if at all, only after appellant's death.

My endorsement of my brothers' definition of equitable adoption is therefore limited to its usage solely within the framework of the Social Security Act and under the peculiar facts of this case.

---

12. Some cases have referred to Section 216(h)(2)(A), 42 U.S.C. § 416(h)(2)(A), as limiting the scope of Section 216(e) by its imposition of an "inheritability" test for children who apply for benefits under that section. We believe, however, that the inheritability test of Section 216(h)(2)(A) does not and cannot apply to adoptions under Section 216(e)(1)(B). Since children adopted by a surviving spouse *after* the insured's death can obviously not qualify as an intestate heir of the insured, reliance solely upon Section 216(h)(2)(A) to define the limits of eligibility would render Section 216(e)(1)(B) meaningless.