**Lillian R. CRAIG, a feme sole, on behalf of Michael A. Kelly, Plaintiff-Appellee,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, successor to Wilbur J. Cohen and John W. Gardner, Defendant-Appellant.**

**No. 28096.**

United States Court of Appeals, Fifth Circuit.

April 24, 1970.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Kathryn H. Baldwin, Robert M. Heier, Patricia S. Baptiste, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

Bernard Cohen, Mabel Spellman Barber, Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge.

This action was brought by Mrs. Lillian R. Craig under 42 U.S.C.A. § 405

(g) of the Social Security Act to review a decision of the Secretary of Health, Education and Welfare which denied child benefits under the Act to Mrs. Craig's adopted son, Michael Kelly. The District Court reversed the Secretary's decision and awarded benefits.

The only question presented in the case is a construction of the phrase "legally adopted" as it appears in 42 U.S.C.A. § 402(d) (9) (B) of the Act. The District Court construed the phrase to mean "a factually existing and continuing parent-child relationship within the specified limitation period created without a view toward economic gain," i. e., an *in loco parentis* relationship. Even though the case is factually appealing in favor of an award, we are forced to disagree with the District Court's construction of the phrase. We conclude that "legally adopted" as used in Section 402(d) (9) (B) means an adoption pursuant to formal statutorily-authorized proceedings. We therefore reverse the judgment awarding child benefits to Michael.[1]

Mrs. Craig applied for old-age benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq., in December, 1961. The benefits were awarded, retroactive to December, 1960.

In November, 1966, she filed application for child benefits on behalf of Michael Kelly, claiming he was entitled to them as her adopted child. The facts relied upon to support this claim are that Michael was born to unwed parents in 1959. At the time of his birth Michael's mother was serving a prison sentence in a Texas penitentiary. She continued to serve this sentence for several years after his birth.[2] Michael's father is Mrs. Craig's grandson. Michael remained in the hospital where he was born for about six weeks and was then released to Mrs. Craig's custody. He has been residing with her ever since under her sole support. In February, 1965, Mrs. Craig consulted an attorney concerning the possibility of adopting Michael formally. In July, 1966, she filed a petition in the Juvenile Court of Dallas County, Texas, for the purpose of adopting Michael. That court rendered a final decree of adoption on October 13, 1966.

Based upon these facts the hearing examiner awarded benefits, concluding that the legal adoption requirement of § 402 (d) (9) (B) was satisfied by an equitable adoption which he found to exist and which was recognized under state law. Reviewing the case sua sponte the Appeals Council reversed on the ground that an equitable adoption does not satisfy the "legally adopted" requirement. This became the Secretary's determination. The District Court agreed that an equitable adoption was insufficient, but held that the existing *in loco parentis* relationship met the requirement of a legal adoption.

Title 42 U.S.C.A. § 402(d) (1) provides that every "child" (within Section 416(e) of the Act) [3] of an individual entitled to old-age benefits is entitled to child benefits if he is "dependent" upon such person. There are thus two main requirements before child benefits can be awarded: the person receiving the

---

1. The District Court opinion is reported at 299 F.Supp. 247.

2. The record does not reveal the exact length of time the mother served, but letters written by her show she had not yet been released in March, 1965.

3. 42 U.S.C.A. § 416(e) provides in part:
   The term "child" means (1) the child or legally adopted child of an individual, and (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed * * *.

Section 416(h) (2) (A) elaborates on the meaning of "child" as follows:
   In determining whether an applicant is the child or parent of a[n] * * * individual * * *, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

benefits must have the status of a "child" and he must be a "dependent". The status of a "child" is determined by § 416. Under § 416(h) (2) (A), one who is not actually the child of a wage earner will nevertheless occupy that status for purposes of the Act if intestate personal property of the wage earner would devolve upon him under the applicable state law (see footnote 3, *supra*), which is Texas law in this instance since Mrs. Craig was domiciled in Texas when she filed her application for old-age benefits. The Secretary has not contested the findings below that Mrs. Craig equitably adopted Michael and that such adoption would be sufficient under Texas law for Mrs. Craig's intestate property to devolve upon Michael. We therefore assume, without deciding, that Michael is a "child" within § 416(h) (2) (A).

Whether one is a "dependent" or not is determined by § 402(d).[4] *If, at the time the wage earner originally filed for old age benefits*, a child is the natural born or adopted child of the wage earner, the child is deemed a "dependent" under § 402(d) (3). There is no requirement under § 402(d) (3) of a "legal" adoption. The Secretary concedes that by virtue of § 402(d) (3) an equitable adoption (at least if recognized under state law) would suffice to make a child a "dependent" if the equitable adoption occurred *before* the wage earner filed application for old-age benefits. Thus, if Michael had been equitably adopted by Mrs. Craig before December, 1961, when she applied for benefits for herself, he would be a "dependent" and entitled to his own benefits.

4. 42 U.S.C.A. § 402(d) provides in part:

(d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

\* \* \* \* \*

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

(ii) if such individual has died, at the time of such death, or

(iii) if such individual had a period of disability which continued until he became entitled to old-age disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits, shall be entitled to a child's insurance benefit for each month, beginning with the first month after August, 1950, in which such child becomes so entitled to such insurance benefits \* \* \*.

\* \* \* \* \*

(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1) (C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—

(A) such child is neither the legitimate nor adopted child of such individual, or

(B) such child has been adopted by some other individual.

\* \* \* \* \*

(9) If an individual entitled to old-age insurance benefits (but not an individual included under paragraph (8) of this subsection) adopts a child after such individual becomes entitled to such benefits, such child shall be deemed not to meet the requirements of clause (i) of paragraph (1) (C) of this subsection unless such child—

(A) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(B) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits, but only if—

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance benefits, for the year before such period of disability began, and

(ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month.

However, in this case Michael was equitably adopted *after* Mrs. Craig became entitled to her benefits in December, 1961.[5] Under § 402(d)(9) he is deemed *not* to be a dependent unless he is the natural child or step child of Mrs. Craig or was "legally adopted" by her within two years after she became entitled to old-age benefits or prior to August, 1966.[6]

The issue is thus clearly framed. If either the equitable adoption (which occurred before August, 1966) or the admittedly existing *in loco parentis* relationship between Mrs. Craig and Michael constitutes legal adoption within § 402 (d)(9)(B), then Michael qualifies as a "dependent" and is entitled to child benefits. If, on the other hand, "legally adopted" in that section means pursuant to formal, statutorily-authorized proceedings, Michael is not a "dependent" because his formal adoption decree was not entered until October, 1966, several months after the August, 1966, deadline.

■ The guiding principle of statutory construction is, of course, to ascertain the legislative intent. *E. g.*, United States v. Bowman, 3 Cir. 1966, 358 F.2d 421; City of Newark v. United States, 3 Cir. 1958, 254 F.2d 93; *see* Hattaway v. United States, 5 Cir. 1962, 304 F.2d 5. There are several indications in the language of the statute itself which show an intent that "legally adopted" as used in § 402(d)(9)(B) contemplates formal state statutory adoption proceedings.

First, the word "adoption" or "adopts" appears in several places throughout the statute without a qualifying or modifying word as, for example, in § 402(d)(3) which is discussed above. It is true that in defining who is a "child" within § 416(e) Congress used the term "legally adopted" and that it there is not limited to a formal procedure. However, § 416 (h)(2)(A) modifies the phrase as *there* used to include anyone upon whom intestate personal property would devolve under the applicable state law. It is significant that there are no such clauses modifying "legally adopted" in § 402(d)(9) where it is used to determine only the question of dependency.

Second, after providing that a child must be "legally adopted" in order to be a "dependent", § 402(d)(9)(B) adds two additional requirements: (i) the child must have been receiving at least one-half his support from the individual it is claimed he is dependent upon at the time that individual filed his application for benefits, and (ii) either *"proceedings for such adoption of the child"* must have been instituted by the month in which the individual filed his application for benefits, or the child must have been living with the individual in that month. (Emphasis added.) (See footnote 4 where these subsections are set out in full). Michael met these additional requirements because he was receiving all his support from Mrs. Craig and was living with her. But the lan-

5. The Hearing Examiner found that Michael was equitably adopted by October, 1963. The District Court found he was equitably adopted no later than 1965. The precise time is immaterial, however, since it is undisputed that Michael was equitably adopted after Mrs. Craig first became entitled to her benefits and before August, 1966, the latest time a legal adoption would qualify him for child benefits.

6. The section actually provides that the child must be "legally adopted" by the individual receiving old-age benefits "before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-

age benefits * * *." Since Mrs. Craig became entitled to her old-age benefits in December, 1961, Michael would, under the language of the section, have to have been legally adopted by January, 1964, in order to receive benefits for himself. However, Congress installed a grace period into this provision making the two year limitation inapplicable to any child adopted prior to August, 1966. Section 323(b), P.L. 89–97 (July 30, 1965). Thus, by virtue of this grace period, although Mrs. Craig first became entitled to old-age benefits in 1961, Michael was required only to demonstrate that he was legally adopted sometime prior to August, 1966.

The pertinent parts of § 402(d) are set out in footnote 4, *supra*.

guage "proceedings for such adoption" appearing in § 402(d) (9) (B) (ii) shows that Congress had in mind earlier in § 402(d) (9) (B) when it used the phrase "legally adopted" something more than a mere relationship having legal efficacy under state law.

Identical language appears in § 402 (d) (8) which provides that an after-adopted child of a person receiving disability benefits is not deemed to be a dependent for purposes of receiving benefits himself unless he was "legally adopted" within a two year period after the wage earner became entitled to disability benefits and *"proceedings for such adoption* of the child had been instituted by such individual in or before the month in which began the period of disability * * *."* (Emphasis added.) The legislative history to § 402(d) (8) shows that Congress intentionally chose the word "proceedings" to indicate that a legal adoption within that section is one consummated by a formal procedure authorized by state law:

> Such proceedings for the adoption of the child are not intended to be limited merely to court proceedings, but also include proceedings and arrangements with licensed adopting agencies or other qualified persons. Sen.Rep.No. 1856, 86th Cong., 2d Sess. (1960); 2 U.S.Code Cong. & Ad.News, p. 3643 (1960).

The emphasis in the plain language of §§ 402(d) (8) and (d) (9), and in the legislative history of § 402(d) (8), upon which the dependency conditions of § 402 (d) (9) are modeled, *see* Sen.Rep.No.404 89th Cong. 1st Sess. (1965); 1 U.S.Code Cong. & Ad.News, pp. 2048–49 (1965), is that the legal adoption must be *accomplished* by "proceedings" recognized by law. In other words, Congress was con-

cerned with something more than a relationship having legal efficacy under state law; it was concerned with the *manner* in which that relationship was created. We cannot overlook what appears to be the plainly expressed intent of Congress, especially since this intent is consistent with the purpose of the provisions of § 402(d) (9) (B) to prevent abuse of the Social Security Act by people who would otherwise adopt children solely to qualify them for benefits.[7]

The concepts of equitable adoption and *in loco parentis* relationships do not involve formal proceedings authorized by statute. We must, therefore, conclude that they are not encompassed by the phrase "legally adopted" as used in § 402 (d) (9) (B). We arrive at this conclusion despite the fact that we are dealing with remedial legislation which should be liberally construed. As said in Schroeder v. Hobby, 10 Cir. 1955, 222 F.2d 713, 715:

> The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted. But it is not the function of the courts to extend by judicial fiat the provisions of the act beyond their fixed limits.

We are further reinforced in our conclusion by the fact that Congress has elsewhere recognized a difference between legally adopted children and children in an *in loco parentis* relationship. In the Longshoremen's and Harbor Workers' Compensation Act, "child" is defined to include, *inter alia*, both "a child legally adopted prior to the injury of the employee" and "a child to whom

---

7. See Sen.Rep.No.404, 89th Cong. 1st Sess. (1965); 1 U.S.Code Cong. & Ad. News, p. 2048:

> The committee believes that the provisions concerning adoptions by retired workers should be made comparable to

those relating to adoptions in other cases so as to provide safeguards against abuse through adoption of children solely to qualify them for benefits, and has included in the bill a provision that would accomplish this result.

the deceased employee stood *in loco parentis.*" 33 U.S.C.A. § 902.

Plaintiff relies on three cases for the proposition that an equitable adoption is tantamount to a "legal" adoption for purposes of determining dependency, Kilby v. Folsom, 3 Cir. 1956, 238 F.2d 699; Rader v. Celebrezze, E.D.Ky.1966, 253 F.Supp. 325; Davis v. Celebrezze, S.D. W.Va.1965, 239 F.Supp. 608. None of these is persuasive, however. Both *Kilby* and *Rader* dealt with the status of a "child" under § 416 and found that an equitable adoption was sufficient to give a person the status of a child where, under state law, intestate personal property would thereby devolve upon him. The dependency question was met—by implication in *Kilby* and expressly in *Rader*— on the ground that the equitable adoption in each case had occurred *before* the wage earner became entitled to benefits. Thus, the legal adoption requirement of § 402(d) (9) (B), which is applicable to after-adopted children only, was not in issue. *Davis* is the only one of the three cases relied on by plaintiff which held that an equitable adoption after the wage earner became entitled to benefits, but before the expiration of the two year period, met the requirement of a legal adoption. In so doing, the court there reasoned that the child met the requirements of § 416(h) (2) (A) because personal property would devolve to her under the applicable state law. However, as the District Court in the instant case correctly pointed out, *Davis* confused the requirements of § 416 providing for the status of a "child" with those of § 402(d) (9) (B) setting forth the requirements for a "dependent."

"Legally adopted" in the dependency requirements of § 402(d) (9) (B) encompasses only formal, statutorily-authorized proceedings. Since Michael was not "legally adopted" by Mrs. Craig within the statutorily prescribed time, he does not qualify as a "dependent" and is not entitled to child benefits under the Act. The judgment is

Reversed.