Annie M. SMITH, and her husband, William Smith, Plaintiffs-Appellants,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant-Appellee.

No. 29098.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1970.

Douglas A. Barnes, Keck & Barnes, Dallas, Tex., for plaintiffs-appellants.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., for defendant-appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

This action was brought under Section 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, which denied appellants' request for child insurance benefits under Section 202(d) of the Social Security Act, 42 U.S.C.A. § 402(d), on the ground that the children in question were not, as claimed, "children" of appellants within the meaning of Section 216(h) of the Act, 42 U.S.C.A. § 416(h). Having exhausted their administrative remedies, appellants appealed to the United States District Court of the Northern District of Texas. There, on motion for summary judgment of both parties, the trial judge found for the defendant appellee and entered judgment accordingly.

The issue on which this case turns is whether the children in question were "equitably adopted" in accordance with Texas law. Because we disagree with the Secretary's application of the legal standard on this question, and the district court's agreement therein, we reverse and remand the cause to the district court with directions to enter judgment awarding child benefits to appellants.

The appellants are Annie M. Smith and her husband, William Smith, the wage-earner. They are domiciled in the State of Texas. The children in question are Darrell Gene Smith, born September 18, 1954; David Wayne Smith, born August 31, 1959, and Ann Marie Smith, born September 24, 1961. They are the natural children of appellants' only daughter, Sylvia. As the appellees concede in their brief, Sylvia "was not an ideal mother" and, for all practical purposes, abandoned the children to the appellants beginning in 1957. She left Darrell in 1957, David in 1960, and Ann Marie in 1961, when she was born. Ap-

pellants took the children into their home and supported them willingly and completely. In 1961, appellant-wage-earner, William Smith, lost both his legs, and in 1962 the Social Security Administration determined that he was disabled and entitled to disability insurance benefits effective September, 1961, the same month that Ann Marie, the youngest child, was left with appellants by their daughter Sylvia. In 1965, appellants commenced formal proceedings to adopt the children legally. On April 27, 1967, the wage-earner was appointed guardian of the three children, and a final judgment of adoption was granted on April 14, 1966.

On April 14, 1967, appellant Annie M. Smith (as wife of the wage-earner) filed an application for child's insurance benefits pursuant to § 202(d) (1) of the Social Security Act, 42 U.S.C.A. § 402(d) (1). It is from a denial of this application that the present appeal arises.

■ The Secretary denied the application on two grounds.[1] First, he held

---

1. The Secretary actually considered the application under three distinct sections of the Act, but since appellants did not rely on the third section at any stage in these proceedings, we do not rule on its applicability one way or the other.

Because the Secretary apparently considered that the applicants might have qualified under this third section, however, we set out the section below, and a recapitulation of the Secretary's findings:

In 1967, Congress amended the Social Security Act to expand its coverage. Under one of these amendments, the child of a disabled wage-earner might qualify for child insurance benefits if that child was

legally adopted by [an individual] entitled to disability insurance benefits]—
(i) in an adoption which took place under the supervision of a public or private child placement agency,
(ii) in an adoption decreed by a court of competent jurisdiction within the United States,
(iii) on a date immediately preceding which such individual had continuously resided for not less than one year within the United States;
(iv) at a time prior to the attainment of age 18 by such child.

42 U.S.C.A. § 402(d) (8) (E).

The Secretary, considering the applicability of this section on his own motion, held that appellants' legal adoption in 1966 did not satisfy this section because it did not take place "under the supervision of a public or private child placement agency." The Dallas County Juvenile Court had granted appellants' petition for adoption after an investigation by the Chief Probation Officer of the Dallas County Juvenile Department. While this procedure apparently conforms with the requirements of the Texas State Adoption Statute, the Secretary was of the opinion that it did not satisfy the requirements of section 402(d) (8) (E). His reason was that the Dallas County Juvenile Department, as an integral part of the Child Welfare Department, *had been* an authorized child placement agency prior to 1965, but in 1965 the Child Welfare Department became a state agency and was made a separate department from the Dallas County Juvenile Department. Since that time, then, the Child Welfare Department has been the authorized child placement agency, and the Dallas County Juvenile Department has had no authority to place children for adoption.

that the applicants had not satisfied the requirement of a "legal adoption" necessary to qualify for benefits under § 202(d) (8) (D) of the Act, 42 U.S.C.A. § 402(d) (8) (D). We agree with this determination. This section requires that, in the case of a child adopted *after* the disabled individual became entitled to benefits, the child, to be eligible for benefits, must have been "legally adopted by such [disabled] individual before the end of the 24-month period beginning with the month after the month in which such individual most recently became entitled to disability insurance benefits. * * *" This Court has recently held in Craig v. Finch, 5th Cir. 1970, 425 F.2d 1005, with respect to another provision of the Act almost identical in terms to section 202(d) (8) (D), that only "formal statutorily authorized proceedings" will satisfy the requirement that a child be legally adopted.[2] Thus, since appellant wage-earner in this case became entitled to disability benefits in September, 1961, and the children were not "legally adopted" until April 14, 1966, the twenty-four month period allowed by the statute had lapsed, and appellants were properly denied benefits under this section.

■ With the Secretary's second ground for denying the application, we cannot agree, however. He was of the opinion that the facts did not establish an "equitable adoption" under Texas law because there was no "clear, unequivocal, and convincing evidence of a contract to adopt" in the case prior to September 1961, the effective date of the wage-earner's entitlement to disability.

Before we discuss our reasons for disagreeing with the Secretary and the court below, we should first summarize the applicable provisions of the Act:

Title 42 U.S.C.A. § 402(d) (1) provides that every "child" of an individual entitled to disability insurance benefits is entitled to child benefits if he is "dependent" upon such person. Whether a child is "dependent" hinges on whether, at the time the wage-earner originally filed for disability benefits, the child is deemed a "child" pursuant to section 416(h) (2) (A) of the Act, which provides as follows:

In determining whether an applicant is the child * * * of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application. * * *

In Texas, courts recognize the principle of equitable adoption, and therefore we must decide whether, at the time the appellant wage-earner became eligible for disability insurance benefits, he had "equitably adopted" the children.

In applying the Texas test for equitable adoption, the Secretary has relied on a series of Texas cases and cases decided by this Circuit which indicate that there must be "clear, unequivocal, and convincing proof of a contract to adopt." Minefield v. Railroad Retirement Board, 5th Cir. 1954, 217 F.2d 786; Hayes v. Secretary of Health, Education and Welfare, 5th Cir. 1969, 413 F.2d 997; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951). The Secretary has read these cases correctly, we think, and we do not disagree with him up to this point. We do disagree, however, with his conclusion that these facts do not satisfy a requirement of clear proof of an agreement to adopt.

It is true that the *Cavanaugh* decision, which is the most recent Texas Supreme Court authority on this problem,

2. The question of "equitable adoption" was not before the Court in Craig v. Finch because there it was found that the child in question had not been equitably adopted until *after* the claimed adoptive parent became entitled to benefits, and this finding was undisputed on appeal. Craig v. Finch, 5th Cir. 1970, 425 F.2d 1005, at 1008 n. 5.

contains facts very similar to ours. There the claimed adoptive parents had reared, clothed, cared for, and educated their orphaned niece. The niece called the claimed adoptive parents "mamma" and "daddy" and took their surname as her own. Yet the court declined to find the requisite agreement to adopt. The Secretary relies heavily on the following statement made by the court in the *Cavanaugh* case:

> It would not have been unnatural when viewed in the light of common knowledge and experience for this aunt to take her orphaned infant niece and rear her to maturity, *giving her all the care and advantages of which an aunt was capable * * * without any agreement or intention on the part of the aunt to adopt the child.* * * *

We think the Secretary has relied too heavily on this passage without considering the significant factual differences between that case and ours. In the first place, *Cavanaugh* dealt with a claim against an estate by an individual asserting that at some point in time the decedent had agreed to adopt the claimant. Thus, since the claimed adoptive parents were *deceased*, there was no direct evidence of any agreement. In the face of such a claim, the court took great pains to insist on clear proof that decedent had agreed to adopt the claimant in order to protect the estate.[3] Also, in *Cavanaugh* there was strong evidence negativing the existence of any agreement to adopt. The court's statement on which the Secretary relies so heavily should be viewed in the context of these facts.

The present case, of course, does not contain the element of claimed adoptive parents whose lips have been sealed by death. Here we have two living individuals, who are telling this Court that they had an adoptive relationship with these children, and who, in fact have verified their assertions by formally adopting the children, albeit too late to qualify under section 202(d)(8)(D) of the Act. Neither does this case contain the strong evidence against the existence of an agreement to adopt that was found in *Cavanaugh*. Rather, there is clear evidence here that the children's natural parent, Sylvia, several times between 1957 and September, 1961 told her parents that she did not want the children, that they could "have them," "raise them," that "she didn't want to have nothing to do with them."

Additionally, we think the Secretary has failed to give sufficient consideration to those factors to which Texas courts look in order to verify the existence of an adoptive relationship, once evidence of an agreement has been found. Texas cases on this point have stressed such evidentiary facts as assumption by the child of the surname of the adopting parents, habitual use by the adopters of the term son or daughter in referring to the child, habitual use by the child of such terms as "mama" and "daddy" in addressing or referring to the adopters, and the existence of a relationship of love and affection between the adopters and the child. Cavanaugh v. Davis, *supra*; Bigleben v. Stevens, 262 S.W.2d 785 (Tex.Civ.App.—San Antonio 1953, writ ref'd n.r.e.); Garcia v. Quiroz, 228 S.W.2d 953 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.).

Our examination of the facts of this case when viewed against these indicia convinces us of the genuineness of appellants' claim. The record reflects that appellants have had custody of and cared for the children ever since the oldest child was three years old, and took the

3. We attach significance to the following statement by the court in *Cavanaugh* at 149 Tex. 583, 235 S.W.2d 978:

> The question here is raised, as is ordinarily true in such cases, when the lips of the adopter have been sealed by death and in an effort to establish an interest in such property. Such claims should be received with caution. Before one should be decreed to be an adopted child and heir of another * * * proof of the facts essential to invoke the intervention of equity should be clear, unequivocal, and convincing.

two youngest children almost immediately after they were born, all prior to the time appellant wage-earner became disabled; that the children knew the appellants only as "mammy" and "pappy"; that the children used the appellants' last name as their own; that the appellants supported the children completely, sent them to school, and paid their doctor bills (Darrell, the oldest, is an epileptic and Ann Marie was born with yellow jaundice); and that appellants decided to take the children because they "loved 'em and would make a home for 'em."

It is true that the testimony reflects that at no time during any of these conversations with Sylvia did the appellants use the word "adopt." Only after they had the children with them for about six years did they apparently contemplate adoption in the legal sense, when "this guy, this case worker, he told (them) to go down and get legal custody of the children, and then about a year later, then he told (them) to adopt them." This was in 1963 and 1964, as near as we can tell from the record, and in 1965 appellants began proceedings to adopt and a judgment of adoption was entered in 1966, after they had obtained a formal consent from Sylvia.

It is clear to us from this evidence that appellants manifested by their actions an intent to keep and care for these children as their own long before they instituted formal proceedings to adopt them. It is clear also from the testimony that appellants did not fully comprehend the legal significance of the word "adopt." Adoption in the formal sense did not enter their minds until they were advised to adopt by a caseworker. Appellants did not even understand the significance of Sylvia's consent to adopt, for when asked whether their daughter "had ever given oral consent (to adopt the children) before April, 1966," appellant replied, "Well the only thing, she just said I could have

'em, Is that when you mean? It wasn't nothing in writing, you know. Only she just said, I could, you know, have 'em."

For appellants to show this adoptive relationship, we do not believe it should have been necessary for them to show that they used the word "adoption" in a formal sense at the pertinent times. To do so, we think, would frustrate the purpose of the Social Security Act, which, it has been said, "is remedial in nature," and requires "a liberal construction in favor of [coverage], if such is reasonably made out." Combs v. Gardner, 6th Cir. 1967, 382 F.2d 949. We think this is especially important in light of Congress' recent amendments expanding coverage under the Act.[4]

It is true that this Court has twice denied the applicability of the Texas doctrine of equitable estoppel in child's insurance cases, and in both cases it applied the test requiring "clear, unequivocal, and convincing proof of a contract to adopt." *Hayes, supra; Minefield, supra.* We do not believe that either of these cases conflicts with our decision in this case, however. In *Minefield*, the denial was understandable because there, as in all the Texas cases dealing with this problem, the claimed adoptive parent was deceased. In *Hayes*, not only was the claimed adoptive parent deceased, but there was evidence that the natural parent had specifically refused to consent to adoption.[5] Moreover, our case contains another element which neither of these cases contains and which bears out the existence of an adoptive relationship at the time appellant wage-earner became entitled to disability benefits: The eventual formal adoption of the children within a reasonable time after the claimed agreement to adopt.

Since the evidence here clearly verifies appellants' claims of an adoptive relationship and the existence of an agreement between the appellants and their

---

4. *See* note 1 *supra.*

5. The natural parent's consent to adopt has been a critical factor in Texas cases.

*Garcia, supra;* Price v. Price, 217 S.W.2d 905 (Tex.Civ.App.—Amarillo 1949, writ ref'd n. r. e.).

daughter that appellants could "adopt" the children, we find that equitable adoption existed at the time appellant wage-earner became eligible for disability insurance benefits, and we reverse the judgment of the district court and remand with directions to enter judgment awarding child benefits to appellants.