**Hazel G. HALL, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education & Welfare, Defendant.**

**Civ. A. No. 71–H–1342.**

United States District Court, S. D. Texas, Houston Division.

Aug. 16, 1973.

Michael Jared Thibodeaux, Houston, Tex., for plaintiff.

Anthony J. P. Farris, U. S. Atty., Helen M. Eversberg, Asst. U. S. Atty., Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), appealing a final decision of the Secretary of Health, Education and Welfare that Hazel G. Hall, wife of wage earner Benjamin J. Hall, is not entitled to wife's insurance benefits under Section 202(b) of the Act, 42 U.S.C.A. § 402(b), and that Sharon Deneal Hall and Vanita Marie Hall, grandchildren subsequently legally adopted, are not entitled to child's insurance benefits under Section 202(d) of the Act, 42 U.S.C.A. § 402(d). The case is before this Court on cross motions for summary judgment. For reasons expressed below, this Court finds that the Secretary's decision is not supported by the applicable law and that the record obligates this Court to grant the plaintiff's motion.

The jurisdiction of the Court is set out in Section 205(g), 42 U.S.C.A. § 405(g), and it provides that ". . . the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842, 846 (1971); Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).

The burden of proof in Social Security cases is on the plaintiff. Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971); Miller v. Finch, 430 F.2d 321, 323–324 (8th Cir. 1970); Brown v. Finch, 429 F.2d 80, 83 (5th Cir. 1970). Resolution of conflicts in the evidence and determinations of credibility are not for the Courts; such functions are solely within the province of the Secretary. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971); Martin v. Finch, 415 F.2d 793 (5th Cir. 1969); Stillwell v. Cohen, 411 F.2d 574, 575 (5th Cir. 1969). The review by the Court is not a trial de

novo, and the function of the Court is not to reweigh the evidence or to substitute its judgment for that of the Secretary. The role of the Courts is to determine if there is substantial evidence to support the Secretary's decision. Goodman v. Richardson, 448 F.2d 388, 389 (5th Cir. 1971); Richardson v. Richardson, 437 F.2d 109 (5th Cir. 1970); Brown v. Finch, *supra,* 429 F.2d at 80; Rome v. Finch, 409 F.2d 1329 (5th Cir. 1969). Uncontroverted evidence is not conclusive of an alleged fact when consideration of the surrounding circumstances leaves the mind in a state of conjecture. Robles v. Finch, 409 F.2d 84, 87 (1st Cir. 1969); Thurston v. Hobby, 133 F.Supp. 205, 210 (W.D.Mo. 1955). The Secretary is not bound to accept as true plaintiff's self-serving statements pertaining to the claim for benefits. Steimer v. Gardner, 395 F.2d 197, 198 (9th Cir. 1968); Peterson v. Gardner, 391 F.2d 208 (2d Cir. 1968); Foss v. Gardner, 363 F.2d 25, 27 (8th Cir. 1966).

Until such time as the claimant, Mrs. Hall, reaches 62 years of age and possibly becomes eligible for social security in her own right, her entitlement is dependent upon that of Sharon and Vanita to child insurance benefits. 42 U.S.C.A. §§ 402(b), 416(h). Thus, the primary focus of this case is upon these children. Section 202(d) of the Act, 42 U.S.C.A. § 402(d), provides for the payment of child's insurance benefits to a child of a worker who is fully or currently insured if the child meets certain requirements. The Act's definition of "child" means the natural or legally adopted child of an individual. 42 U.S.C.A. § 416(e). Section 202(d)(9) of the Act, 42 U.S.C.A. § 402(d)(9), states that if an individual (Mr. Hall) entitled to retirement insurance adopts a child after becoming entitled to such benefits, the adopted child shall not be deemed to meet the requirements of a "child" unless that child: (1) is the natural or stepchild, or (2) was legally adopted before the end of the 24 month period beginning with the month after that in which such individual became entitled to old age insurance benefits, but only if (a) the child has been receiving at least one-half of his support from such individual for the year before the application for retirement insurance benefits was filed and (b) the proceedings for adoption had been instituted in or before the month the application was filed or else the adopted child was living with the individual during that month. Section 216(h)(2) of the Act, as amended, 42 U.S.C.A. § 416(h)(2), provides that in determining whether the child in question is a "child" of an insured individual, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the Courts of the State in which the individual is domiciled. This latter provision contains the crux of this case. There seems to be no dispute that a "legal adoption" of the children in question did not take place until July 7, 1969 (Transcript 114–117), more than three years after the wage earner (Mr. Hall) filed his application for retirement insurance benefits on March 30, 1966 (Tr. 90–93). Therefore, the claimant and the two children cannot become entitled to benefits on the basis of the "legal adoption", because it did not take place within the 24 month period noted above. It appears undisputed that had the legal adoption occurred within the 24 month period, Mrs. Hall and the girls would qualify for benefits. The central issue then becomes whether the girls were "equitably adopted" under Texas law during this same period.

The children in question, Sharon and Vanita, natural children of Mrs. Aline C. Walker, were born in 1953 and 1958 respectively. Mrs. Walker is the daughter of the Halls. Shortly after Mrs. Walker's marriage in 1951 domestic discord arose, and she separated from her husband, coming to live with the Halls while she was pregnant with her first child (Tr. 67, 79). Shortly after the birth of Sharon, she reportedly "gave" her to the Halls (Tr. 49–51, 68, 80). Sharon was nearly two years old before

Mrs. Walker left her parents' home and returned to Shreveport, Louisiana, but during those two years Mrs. Walker reportedly did not assume responsibility over Sharon as would a parent; this duty was left to Mrs. Hall (Tr. 68). Following the birth of Vanita some years later in Louisiana, she too was "given" by Mrs. Walker to the Halls (Tr. 49–51, 83).

With respect to the familial relationship of the Halls to Sharon and Vanita, their natural grandchildren, the Hearing Examiner concluded, "[t]here can be little doubt that the Halls have been the sole support of Sharon and Vanita, and the principal if not the sole persons in any serious position to assert parental authority over the children virtually all their lives" (Tr. 26). The record indicates that the Halls fed and clothed the children, attended to their medical, scholastic and religious needs, administered discipline and, in general, made the same sacrifices most parents are required to undertake for their own children (Tr. 51, 55, 70, 131, 145, 146, 147). The record suggests that this was done in a loving and affectionate manner (Tr. 50, 66, 77, 142–43, 144, 148). The record does not clearly indicate that Mrs. Walker, the natural mother, sought to exercise control or supervision over the girls or that she even harbored the desire to join the girls together with Mrs. Walker's other two children, both boys, with whom she lived in Louisiana (Tr. 50–51, 56, 66, 81–82, 84. *But see* Tr. 62, 108–09, 122). Mrs. Walker reportedly gave no financial assistance to the raising of the girls (Tr. 120).

Allegedly, the Halls considered formal, legal adoption several times prior to Mr. Hall's application for social security. Initial consideration reportedly occurred shortly after the Halls acquired Sharon (Tr. 48–49, 69). The issue arose again when the Halls were confronted by various federal, state and local administrators needing information as to who had legal custody of the girls. This arose with respect to school admission, federal tax deductions, emergency hospital admittance and a driver's permit (Tr. 127, 52, 60–62, 122, 124, 125, 131). The Halls kept "putting it (legal adoption) off" (Tr. 119) reportedly due in part to the high legal costs believed necessary (Tr. 49, 125, 127, 146) and in part due to the administrative delays of social workers (Tr. 61, 124). Each crisis was met and overcome without the need for obtaining a legal adoption (*See, e.g.,* Tr. 51–52). It appears that the belief of the Halls that a legal adoption was necessary as a condition precedent to qualifying Mrs. Hall for social security benefits was the motivating force culminating in the legal adoption (Tr. 48, 53).

■ The Fifth Circuit Court of Appeals has considered the Texas doctrine of equitable adoption in the context of Social Security benefits five times. Glaze v. Richardson, 438 F.2d 120 (5th Cir. 1971); Smith v. Secretary of Health, Education and Welfare, 431 F.2d 1241 (5th Cir. 1970); Craig v. Finch, 425 F.2d 1005 (5th Cir. 1970); Hayes v. Secretary of Health, Education and Welfare, 413 F.2d 997 (5th Cir. 1969); Minefield v. Railroad Retirement Board, 217 F.2d 786 (5th Cir. 1954). Under this doctrine, there must be convincing proof of a "contract" to adopt. Smith v. Secretary of Health, Education and Welfare, 431 F.2d 1241, 1243 (5th Cir. 1970); Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951); Guidry v. Denkins, 460 S.W.2d 943, 948 (Tex.Civ.App.—Houston 1970, no writ). It is not necessary, however, that there be direct evidence of such an agreement or contract. It may be proved by the acts, conduct and admissions of the parties, as well as other relevant facts and circumstances. *Cavanaugh, supra,* 235 S.W.2d at 975; Mitchell v. Burleson, 466 S.W.2d 646, 649 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.). It has been stated that the contract must be shown by "clear, unequivocal, and convincing proof". *Smith, supra,* 431 F.2d at 1243; *Cavanaugh, supra,* 235 S.W.2d at 978. As recently as 1971, however, the Texas Court of Civil Appeals, reviewing equitable adoption cases for the

degree of proof required, concluded that there is no greater burden placed upon the party claiming an equitable adoption that would normally be required to support a jury finding. *Mitchell, supra,* 466 S.W.2d at 649.

■ Drawing upon Texas cases, the Fifth Circuit Court of Appeals has high-lighted some of the factors to which Texas courts look in order to verify the existence of an adoptive relationship, once evidence of an agreement has been found. They include:

(1) The assumption by the child of the surname of the adopting parents.

(2) Habitual use by the adopters of the term son or daughter in referring to the child.

(3) Habitual use by the child of such terms as "mama" and "daddy" in addressing or referring to the adopters.

(4) The existence of a relationship of love and affection between the adopters and the child.

*Smith, supra,* 431 F.2d at 1244. To this list might be added certain other factors for consideration, depending upon the facts of the case:

(5) Whether the natural parent has given or withheld consent for adoption, or was possibly not in a position to voluntarily make such a decision.

*Smith, supra,* 431 F.2d at 1245 n. 5; *Hayes, supra,* 413 F.2d at 999; *Craig, supra,* 425 F.2d at 1006 (mother in prison and thus unable to voluntarily choose to raise or reject her own child).

(6) Whether the "adopted" child has relied upon representations of the adopting parents with respect to a promise, agreement or contract that the child would be adopted.

*Hayes, supra,* 413 F.2d at 999; Lowrey v. Botello, 473 S.W.2d 239, 243 (Tex. Civ.App.—San Antonio 1971, no writ); Malone v. Dixon, 410 S.W.2d 278, 279 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.).

(7) Whether the eventual formal adoption of the children occurred within a reasonable time after the claimed agreement to adopt.

*Smith, supra,* 431 F.2d at 1245.

(8) Whether there are indicators of express rejection of a possible equitable adoption.

Servantez v. Aguirre, 456 S.W.2d 467 (Tex.Civ.App.—San Antonio 1970, no writ).

This Court will consider each factor seriatim as applicable to this case.

■ As to the first, the record reflects that the children were not given the Hall's surname on any records, school or tax, until they were formally adopted. On federal tax reports, they were identified as "grandchildren" which even the Hearing Examiner admitted was a "biological fact" (Tr. 71). The use of the surname Walker was reportedly compelled by the insistence of school authorities at using the name appearing upon Sharon's and Vanita's birth certificates; this is not an unreasonable requirement (Tr. 70). Furthermore, it has been held that the mere failure to use the adopting parents' surname does not compel a finding of no equitable adoption. It is only one of the facts and circumstances to be considered. Malone v. Dixon, 410 S.W.2d 278, 284 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.). With respect to the second and third factors, it appears that these were met, as it was reported that Mrs. Hall was called "Dear" by her children, Mr. Hall was called "Daddy", and Sharon was called "Daddy's Baby" by Mr. Hall (Tr. 51, 77, 144). The fourth factor appears to be met as indicated in the factual outline above. With respect to the fifth factor, the record does not indicate that the mother had not given her consent. To the contrary, the fact that she retained custody and control over two of her natural children, both boys, while giving up two others, both girls, strongly points to a renouncement of control. As to the sixth factor, there is nothing in the record to indicate wheth-

er Sharon or Vanita "relied" upon the representations. Although the girls were approximately 17 and 12 respectively, neither testified at the hearing. Evidence of whether they submitted to the new family environment and developed suitable love and affection for their adoptive parents and regarded the adoptive environment as "home" might bear upon this factor. At any rate, there is no contrary evidence that the two girls during times material to this inquiry did not fit willingly into such an environment. The seventh factor, which this Court does not consider to be critical, is more difficult to satisfy timewise, as the legal adoption occurred in 1969, a number of years after the children were "given" to the Halls in the mid and late 1950's. However, a somewhat similar situation is found in *Smith, supra.* Considering the level of education of the parties, their working status and the fact that there was no critical need within the framework of their lifestyle for concluding such a legal formality until they sought Social Security assistance, this Court finds that the intent to adopt never varied and that the requirement of reasonableness was satisfied under the circumstances. The last factor for consideration raises several evidentiary items. The defendant points out that Mr. Hall, when applying for retirement benefits in 1966, did not list any children on his application form. Where a person expressly denies the existence of adoption, he is later estopped from claiming the same. *Servantez, supra.* However, the application form did not inquire into "dependents" or "grandchildren" but asked the applicant to list: "Your unmarried children (including natural children, adopted children and stepchildren)" (Tr. 90). Mr. Hall had previously listed these children as "grandchildren" on income tax reports, (Tr. 134, 136, 138, 140, 141) and if, in fact, there had been prior family discussions regarding legal adoption, Mr. Hall would have known that the children were not so "adopted" (*See* Tr. 65). It would be unreasonable to assume that Mr. Hall could or should have anticipated the ramifications of the doctrine of equitable adoption. Furthermore, Mr. Hall appears to have been involved in a serious automobile accident during the week prior to his making application for Social Security benefits for which he subsequently submitted to brain surgery (Tr. 63–64, 75). This application form was not filled out by Mr. Hall prior to his signing it (Tr. 73–75). Although the record does not indicate who did fill out the application, it was not Mrs. Hall who stated that she was at work at the time and unable to accompany him (Tr. 71–72, 73). Furthermore, federal tax audits in 1961 and 1965 apparently satisfactorily concluded that the Halls had assumed at least financial responsibility for the girls (Tr. 71, 109, 125).

This Court has given careful consideration to the doctrine of equitable adoption and its applicability to Social Security benefits. *See, e.g.,* Annot. 10 ALR Fed. 903 (1972). The Court is aware of "what appears to be the plainly expressed intent of Congress . . . to prevent abuse of the Social Security Act by people who would otherwise adopt children solely to qualify them for benefits". Craig v. Finch, 425 F.2d 1005, 1009 and n. 7 (5th Cir. 1970). It is often difficult to determine when a "contract" for adoption, legal or equitable, has been made, particularly in the context of close familial relationships. The Texas Supreme Court in 1951 held that the mere assumption of responsibility by relatives for the children of others is not necessarily indicative of equitable adoption.

It would not have been unnatural when viewed in the light of common knowledge and experience for this aunt to take her orphaned infant niece and rear her to maturity, giving her all the care and advantages of which the aunt was capable, receiving in return that which was justly due in the way of affection and normal services, without any agreement or intention on the part of the aunt to adopt the child and thereby make her a legal heir to

property. Someone had to care for the respondent or she would have become a charge upon the public.

*Cavanaugh, supra,* 235 S.W.2d at 978. More than just mutual love and affection has been required. *See, e. g., Lowrey, supra,* 473 S.W.2d at 242. However, as the Texas cases clearly point out, the driving force behind the doctrine of equitable adoption is that:

> [t]he question here is raised, as is ordinarily true in such cases, when the lips of the alleged adopter have been sealed by death and in an effort to establish an interest in property. Such claims should be received with caution.

*Cavanaugh, supra,* 235 S.W.2d at 978; *Lowrey, supra,* 473 S.W.2d at 242; Mitchell v. Burleson, 466 S.W.2d 646 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); Guidry v. Denkins, 460 S. W.2d 943, 948 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ). The Texas Supreme Court, drawing upon analogous authority, has noted that equitable adoption "is based upon contract *for the protection of the child* and binding on the parties or those in privity with them". Heien v. Crabtree, 369 S.W.2d 28, 31 (Tex.Sup.Ct.1963) (emphasis added).

The Fifth Circuit Court of Appeals, construing the Texas equitable adoption doctrine and applying it to Social Security determinations, correctly recognized that the key feature of Texas law making the doctrine such a rigid test is not always present in Social Security benefit contexts. That feature is the death of the adoptive parents, thereby sealing the lips of those who had agreed to the adoption. That is not true in this case in which both adoptive parents gave testimony before the Secretary. Additionally, as that Court pointed out, the Social Security Act is "remedial in nature" and requires "a liberal construction in favor of coverage, if such is reasonably made out." Smith v. Secretary of Health, Education and Welfare, 431 F.2d 1241, 1245 (5th Cir. 1970). Under this viewpoint of the law, the Fifth Circuit

in *Smith,* under facts strikingly similar to the present case, determined that the requirements of equitable adoption were met. The Court in *Smith* apparently was of the belief that the Texas courts would construe the doctrine somewhat more liberally in instances in which the adoptive parents were alive and available for appropriate questioning and cross-examination. At least one other United States District Court has recognized this factor, although its final decision was based on somewhat different grounds. Holman v. Richardson, 323 F. Supp. 606 (E.D.Tex.1970).

The record clearly reveals that the Hearing Examiner relied substantially upon Craig v. Finch, 425 F.2d 1005 (5th Cir. 1970), and may have considered himself bound by it in determining whether an equitable adoption occurred (*See* Tr. 88, 22, 27). The Fifth Circuit Court of Appeals subsequently noted that equitable adoption was not before the *Craig* court. *Smith, supra,* 431 F.2d 1241 n.2. Furthermore, *Craig* has been criticized as to its conclusion. Glaze v. Richardson, 438 F.2d 120, 121 (5th Cir. 1970). The record in this case also indicates that the Secretary's position is based upon lack of particularly strong evidence being presented by the plaintiffs that a direct, bilateral contract to adopt resulted (*See e. g.,* Tr. 27, 109).

■ This Court has carefully considered the record as well as the authorities and argument advanced by counsel in the excellent briefs which have been filed. Taking into account the contexts of the Social Security cases, the remedial purposes of the Social Security Act and the factual distinctions advanced in Smith v. Secretary, *supra,* to differentiate those holdings from the Texas authorities such as Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951), all of which have been analyzed heretofore, this Court feels compelled to follow *Smith.* Accordingly, from a review of the undisputed facts, it is the opinion of this Court that the Secretary in this instance applied an incorrect legal standard to such facts in denying the plain-

tiff's claim. Instead, these undisputed acts, conduct and admissions of the parties as well as other relevant facts and circumstances when considered in their totality and measured under *Smith* serve to encompass a genuine agreement to adopt, thereby satisfying the requisites of the Texas doctrine of equitable adoption. Had the Secretary applied the *Smith* test instead of that in Craig v. Finch, *supra,* it is fair to state that equitable adoption would have been found to exist.

The plaintiff's motion for summary judgment is granted; the defendant's motion for summary judgment is denied. Clerk will notify counsel.