Ruby MORRIS for Braggston T. MORRIS, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. MO–85–CA–101.

United States District Court, W.D. Texas, Midland-Odessa Division.

Oct. 3, 1986.

Chris McCormack, Midland, Tex., for plaintiff.

Harold O. Atkinson, Asst. U.S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

BUNTON, District Judge.

Plaintiff, Braggston Morris, through Ruby Morris, seeks judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) of a final decision of the Secretary of Human Services denying his claim for child's insurance benefits under § 202(d) of Title II of the Act, 42 U.S.C. § 402(d).

Plaintiff contends that the Administrative Law Judge erred as a matter of law in that he applied incorrect legal standards, and misconstrued the pertinent regulations governing Plaintiff Braggston Morris' entitlement to benefits. Plaintiff further contends that the Secretary's decision is not based on substantial evidence, and that Plaintiff was not allowed to properly develop the record.

After reviewing the record, the Court is of the opinion that the Secretary's decision is supported by substantial evidence, that the Secretary correctly interpreted and applied the applicable law, and that Plaintiff was given an adequate opportunity to develop the record. Accordingly, the Secretary's decision is hereby AFFIRMED.

### I.

Before proceeding to the merits of Plaintiff's complaint, this Court will first explain the basic ground rules of this Court's authority to review the Secretary's decision.

Congress in enacting 42 U.S.C. § 405(g) limited this Court's judicial review of the complained agency decision or action in cases of this nature merely to determine whether the Secretary's decision is supported by substantial evidence. As such, this Court may not substitute its judgment for that of the Secretary, nor may it rejudge the credibility of the witnesses present before the agency factfinder. See *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Patton v. Schweiker*, 697 F.2d 590, 591 (5th Cir. 1983); *Green v. Schweiker*, 694 F.2d 108, 110 (5th Cir.1982); *Wilkinson v. Schweik-er*, 640 F.2d 743, 744 (5th Cir.1981). This Court may only review the agency record to determine whether the Secretary's decision is supported by substantial evidence or whether the Secretary has erroneously interpreted or applied the law in her administrative function. *Dorsey v. Heckler*, 702 F.2d 597, 599 (5th Cir.1983); *Bormey v. Schweiker*, 695 F.2d 164, 166 (5th Cir.1983). It is quite well settled law that Plaintiff is not entitled to a *de novo* type review of the Secretary's decision in this proceeding.

■ The Social Security Act entitles every "child" of an individual who dies fully or currently insured to child's insurance benefits. Social Security Act § 202(d)(1), 42 U.S.C. § 402(d)(1). Plaintiff has the burden of proving his entitlement to survivor's insurance benefits under the Social Security Act.

Having set out the basic controlling law and wisdom in this area of the law, this Court concludes that this Court's authority exercised in this cause is generally limited to determining whether such relevant evidence exists as could be found sufficient or adequate by a reasonable mind to support the Secretary's decision, and to determine whether the Secretary has erroneously interpreted or applied the law in her administrative function.

### II.

#### Administrative Proceedings

Plaintiff's application for child insurance benefits was filed on October 27, 1983. The wage earner in question was Robert James Morris, Sr. who died on November 14, 1981. The Social Security Administration denied Plaintiff's initial application. Plaintiff then requested a de novo hearing before an administrative law judge. On August 7, 1984, the administrative law judge heard Plaintiff's case, and on August 30, 1984, issued a decision stating that Braggston Morris was not entitled to child's insurance benefits. The Appeals Council denied Plaintiff's request for review of the hearing decision on March 8, 1985. Thus the administrative law judge's

decision is the final decision of the secretary and is subject to judicial review. The Court will now address the merits of this case.

### III.

█ The evidence in this case clearly shows that the Plaintiff, Braggston Morris is not the child of the deceased wage earner, Robert J. Morris, Sr. Furthermore, it is clear that Plaintiff is not the legally adopted son of the deceased. Thus, the principle issue in this case is whether the Plaintiff is an equitably adopted child. If Plaintiff is an equitable adopted child, he would be entitled to benefits. 20 C.F.R. §§ 404.354(a) and 404.338(a). According to the regulations, an equitably adopted child is as follows:

> You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur. The agreement to adopt you must be one that would be recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will the agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs. If you apply for child's benefits after the insured's death, the law of the State where the insured had his or her permanent home at the time of his or her death will be followed....

The decedent wage earner resided in Texas at the time of his death. As such, Texas state law must be used to determine whether Braggston is Mr. Robert J. Morris Sr.'s equitably adopted child. Any analysis of the doctrine of equitable adoption in Texas must begin with the case of *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972 (1951). In the *Cavanaugh* case, Ms. Davis claimed that she was the equitably adopted daughter of the deceased. The Supreme Court of Texas stated that for an equitable adoption to be present, there must be clear and convincing evidence of

an agreement or contract to adopt. The evidence for such an agreement need not be direct. The agreement could be proved by the acts, conduct, and admissions of the parties, along with other relevant facts and circumstances. *Id.*, 235 S.W.2d at 975. Thus, an equitable adoption can be shown to exist if the conduct of the individuals concerned clearly, unequivocally, and convincingly demonstrates the requisite agreement. The Court also noted that claims of an equitable adoption must be received with caution, particularly where the alleged adopter's lips are sealed by death. *Id.*, at 978. A recent Texas Court of Appeals case is in accord with the *Cavanaugh* decision. In *Defoeldvar v. Defoeldvar*, 666 S.W.2d 668 (Tex.App. 2 Dist.1984), Plaintiffs were claiming to be the equitably adopted children of the deceased, who was their step-father. The Court in *Defoeldvar* held that the "contract to adopt is the basis of the doctrine of equitable adoption and it must consist of a present promise to adopt, as opposed to a mere desire or intention to adopt in the future. *Id.*, at 671. In the *Defoeldvar* case, the Court commended the step-father for accepting the responsibility to assist in the raising of his step-children, and for showing them the love and affection that he did; however, the Court also stated that the evidence did not show that he ever made an agreement with anyone to adopt the children. The Court is of the opinion that the evidence in the record clearly supports the Secretary's findings that there was no agreement to adopt.

Plaintiff argues that this case should be decided like the cases of *Smith v. Secretary of HEW*, 431 F.2d 1241 (5th Cir.1970) and *Broussard v. Weinberger*, 499 F.2d 969 (5th Cir.1974). The Respondent in this case argues that these cases are distinguishable from the Plaintiff's situation. The Court agrees with the Respondent. In *Smith*, the child in question was legally adopted by court decree more than four years before the Fifth Circuit's decision. The adoptive parents had instituted formal adoption proceedings in 1965, and the process was not completed in time to satisfy the statutory requirement. The fact that

the children were ultimately adopted was an important factor in the court's decision. Also, unlike the case before the Court, the wage earner in the Smith case was alive to testify. Furthermore, there was a clear rejection of the children by the natural mother, and the purported adoptive parents were uneducated and did not understand the legal significance of the word adopt. The situation before the Court is distinguishable in that there has been no legal adoption, the wage earner is deceased, and the parties involved are significantly more educated than those in the *Smith* case. As the record reflects, the grandparents actually rejected the alternative of adoption and chose to foster the child's biological identity. Furthermore, the natural mother never rejected her child. She sees him regularly and acknowledges that she is the mother.

The Morrises were not uneducated or totally lacking knowledge about the legal system. Ruby Morris has a doctorate degree, and the Morrises knew to hire an attorney to have Braggston's name changed as far back as 1972. Thus the *Smith* case does not apply to Plaintiff's situation.

The case *Broussard v. Weinberger*, 499 F.2d 969 (5th Cir.1974) is much more analagous to the Plaintiff's case. In the *Broussard* case, the child's grandparents cared for the child as their own. This is similar to Plaintiff's case. Plaintiff's grandparents provided him with all of his necessities, and looked upon Braggston as if he was their son. However, Plaintiff's case is different from the *Broussard* case in two crucial aspects. First, Plaintiff's natural mother never rejected nor abandoned him. Plaintiff's natural mother stated that she considers Braggston to be her son even though the Morrises have raised him. In *Broussard,* the child's mother completely rejected the child. Secondly, Braggston's natural mother sees Braggston regularly, and she gives him gifts. The testimony in the record is clear that there was no arrangement or plan to adopt Braggston.

The Plaintiff argues that it is a common practice in the black community for grandparents to raise illegitimate grandchildren as their own, and as such families in Plaintiff's situation never consider legally adopting the child they have inherited. Plaintiff argues that it is understood that in situations such as the one before the Court, the grandparents will in all respects assume the parent-child relationship. Even if the Plaintiff's contention is true, the law does not allow for such a relationship to have significance for Social Security cases. Texas law on equitable adoption is clear. There must be a clear, unequivocal, and convincing demonstration that there is an agreement to adopt before an equitable adoption is recognized. The facts in this case show that the grandparents assumed the responsibility for Braggston's upbringing, but the facts also clearly show that they intended that Braggston understand who his parents were. As such, they opted not to adopt Braggston. They had an opportunity to adopt when they changed Braggston's name, and they chose not to do so. Thus, the Court must agree with the Secretary's decision.

The Court found the record in this case to be well developed, and cannot see how additional information would have made a difference in the determination. All the necessary information for a sound decision was present. For this reason, the Court is of the opinion that Plaintiff's contention that he was not afforded an adequate opportunity to develop the record is without merit.

The Secretary in this decision properly applied the pertinent regulations governing Plaintiff's entitlement to benefits, and properly applied Texas law on the equitable adoption issue. Furthermore, the Secretary's findings are based on substantial evidence, and the record in this case is sufficiently developed. As such, this Court finds the Secretary's decision to be without error. Accordingly,

IT IS ORDERED, ADJUDGED, and DECREED that the Secretary's determination is AFFIRMED.